STATE *vs.* JOSEPH CAIRO *et al.*

AUGUST 5, 1948.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'Connell, J.  Indictments in the instant case were
returned by the grand jury against Joseph Cairo, Ernest
Silvio, and Albert DiOrio, charging them with breaking
and entering in the nighttime at Providence, Rhode Island,
on December 9, 1945 "the store of Albert A. Geremia, Vin-
cent Geremia and Louis Geremia, doing business as People's
Furniture Store, with intent to commit larceny therein."
The case was tried in the superior court only against Joseph
Cairo and Ernest Silvio.  Both were found guilty by a jury

and the verdict was upheld by the trial justice who stated in a rescript denying defendants' motion for a new trial that in his independent judgment "there was ample evidence to justify the jury in reaching a verdict of guilty against each defendant." The case is before us on the defendants' exceptions to the denial of their motions for a directed verdict and for a new trial, and on numerous other exceptions taken by them during the course of the trial.

The evidence presented by the state showed that on Saturday, December 8, 1945, one of the partners of the People's Furniture Store closed the store about 9:30 p.m.; that he locked the safe which contained money, including some bundles of currency of $100 each, which were stapled together with a wire staple, and six faucets of a special make which had been purchased to use in an emergency because they were difficult to obtain "on account of war conditions." In the early morning of Monday, December 10, 1945, a window was found open, the window gear was damaged, the safe had been broken into, and the money and three of the faucets were missing.

Late in the evening of that same day the defendants Cairo and Silvio and their wives were apprehended by the police, who stopped their automobile at LaSalle Square in Providence and took them to the police station. While they were in the automobile Silvio was seen to pass some article to Mrs. Silvio. When searched at the station two billfolds were found, one of which she claimed as her own. The other, containing about $1000 in currency, she stated belonged to her husband. Upon the person of Cairo was found $855 in currency. Some of the bills so found were introduced at the trial as state's exhibits and showed staple marks in the position corresponding to those in the bills missing from the People's Furniture Store.

Mrs. Cairo was released from custody and about midnight went to her home with four police officers. These officers testified that they searched the house at the invitation and with the consent of Mrs. Cairo. The evidence

showed that the house, a two-family structure with a store attached, was owned *jointly* by Mrs. Cairo and her husband, one of the defendants. A search of the upper part of the house, occupied by the Cairos and the family of her sister Mrs. Rose Triplett, disclosed nothing, but a search of the cellar, which was used in common by both families, revealed a canvas bag containing tools and three faucets similar to those missing from the safe of the People's Furniture Store.

Four police officers testified that after prolonged examination the defendants made voluntary oral admissions of participation in the break at the People's Furniture Store; that the tools found in the Cairo home were used to make the break; and that the money which the police took from them was part of the money taken from the safe.

Cairo's defense was that at the time of the break he was home with his family making sausages, and he presented evidence tending to support this claim. Silvio's defense was that at that time he was attending a party at his own home to celebrate the return of his brother-in-law from the Pacific area, and he likewise presented testimony tending to support his claim. Both defendants denied they had admitted anything to the police to implicate them in the break charged by the state, and claimed that the police had beaten and abused them severely in an attempt to extort a confession. Mrs. Cairo denied that she had invited the police to search her house or had given them permission to do so. She claimed that the search was made without her consent and against her objections.

The same grand jury which returned the present indictment also returned an indictment against the defendant Cairo charging him with possession of burglar's tools. In that case, a motion was made before trial by the defendant Cairo to suppress the same evidence which constitutes state's exhibits numbered 1, 6, and 7 in the instant case. At a hearing on that motion the defendant presented testimony that the police forced their way into his house. The

state presented no testimony but merely argued that the manner or method of obtaining evidence had no bearing on its admissibility. On that state of the record the trial justice granted the motion to suppress. No motion to suppress such evidence was filed before trial in the instant case, but the defendants contend that the granting of the motion to suppress similar evidence in the case charging possession of burglar's tools was res adjudicata in this case.

Whatever effect the ruling of the trial justice on the motion to suppress may have in the case charging the defendant with possession of burglar's tools, we are of the opinion that it was not res adjudicata in the instant case, which was based upon a separate indictment charging three different defendants with breaking and entering in the nighttime with intent to commit larceny, whereas the indictment charging possession of burglar's tools was against the defendant Cairo alone.

The one hundred sixteen exceptions taken by the defendants may be treated under four categories: (1) exceptions involving evidence secured by a search of the cellar of the defendant Cairo's house and referred to herein as "suppressed evidence"; (2) exceptions involving alleged oral statements and admissions in the nature of confessions and herein referred to as "admissions"; (3) exceptions involving sufficiency of the evidence; and (4) exceptions to the charge of the court.

All of the defendants' exceptions in the group involving so-called "suppressed evidence" relate to exhibits 1, 6, and 7 which were taken in the search of the cellar of the Cairo house, while Cairo was being held at the Providence police station on the evening of December 10, 1945. The defendants contend that these exhibits were taken during an illegal search of the defendant Cairo's home, and in violation of his constitutional rights which prohibit such an illegal search and prohibit a defendant from being compelled to give evidence incriminating himself. In

support of this contention many federal cases and cases from other jurisdictions are cited to support the proposition that generally evidence obtained by officers of the law through illegal search and seizure is not admissible in a criminal trial against the defendant. These cases follow the principles set forth in *Boyd* v. *United States,* 116 U. S. 616, and the series of cases collected in annotations in 134 A.L.R. 819, and 150 A.L.R. 566.

The state contends, first, that the search was not illegal, because it was made with the voluntary consent and permission of Mrs. Cairo, wife of one of the defendants, who owned and occupied the property *jointly* with her husband; and, secondly, that even if the search is held to be unlawful the evidence obtained thereby is nevertheless admissible against a defendant charged with a felony, according to the common-law rule followed by a majority of the states; and, thirdly, that even if the federal rule should be applied, the evidence is nevertheless admissible because the defendant failed to make a timely motion to suppress it. The cases supporting this last contention are also collected in annotations in A.L.R., *supra.*

This court has not heretofore adopted either the so-called state or federal rule and we are not called upon to decide that question here, because we are of the opinion that even if the search should be held to be illegal the so-called "suppressed evidence" was admissible in the instant case under either rule. It would be admissible under the state rule where such testimony may be presented regardless of the means or method of its acquisition. It is admissible under the federal rule because timely objection was not made in the instant case by motion to suppress before trial.

There is ample authority under the federal rule to the effect that evidence obtained by an illegal search and seizure may be admitted when no application is made to suppress the evidence before the commencement of trial. In *Rocchia* v. *United States,* 78 F.2d 966, the court said at

page 970: "It has been uniformly held that a motion to suppress made upon the trial comes too late where the defendant has knowledge of the seizure long prior to the trial and neglects to make such a motion before the trial." In *Dunn* v. *United States,* 98 F.2d 119, the court stated: "Such objections must be seasonably made. Except where there has been no opportunity to present them in advance of trial, a court when engaged in trying a criminal case will not stop to inquire into the legality of a search by which otherwise competent evidence has been obtained. The court will not thus halt the orderly progress of the trial to inquire into a collateral matter."

And it was held in *Smith* v. *United States,* 112 F.2d 217, that an objection to evidence on the ground that it was illegally obtained comes too late when not asserted until after the trial was in progress, in the absence of a showing that the defendant lacked the opportunity to move for the suppression of such evidence in advance of trial. The reason for this rule is well stated in *State* v. *Conner,* 59 Idaho 695, where the court used the following language: "It must be borne in mind that a proceeding to suppress evidence, because procured in violation of a defendant's constitutional rights, is not a part of his trial. It is separate and apart from the trial, and the reason for the rule is that where the defendant has had an opportunity to petition for the suppression of the evidence before the trial he must do so or will be held to have waived it for, to permit inquiry as to the admissibility of the evidence, during the trial, would certainly result in expensive delay and might result in confusion. In view of the purpose of the rule, requiring that the application to suppress be made before trial, it must be and is held to require that it be made early enough, when possible, to cause no interference with the progress of the trial. This cannot be accomplished by making the application after the jury has been examined and accepted and before it is sworn."

To the same effect see *State* v. *Gunkel,* 188 Wash. 528, and *Segurola* v. *United States,* 275 U. S. 106.

In *Cogen* v. *United States,* 278 U. S. 221, the court quotes with approval the case of *Segurola* v. *United States, supra,* and refers to the cases of *Gouled* v. *United States,* 255 U. S. 298, 305, and *Agnello* v. *United States,* 269 U. S. 20, as exceptions to the rule that motions to suppress should be made before trial. The latter case and *Amos* v. *United States,* 255 U. S. 313, are cited by the defendants as authority for the rule that motions to suppress were timely even if made during the trial and not before. In the *Segurola* case, *supra,* the *Amos* case was referred to as an exception to the rule. In the case of *Gouled* v. *United States, supra,* it was held that objection was not too late because it came promptly upon the first notice the defendant had that the government was in possession of the paper sought to be excluded, and hence the *rule* was *inapplicable.*

In *Price* v. *Johnston,* 125 F.2d 806, 316 U. S. 677 (writ of certiorari denied in 1942), the general rule was laid down as we have stated it herein. See also *Nardone* v. *United States,* 308 U. S. 338. In the particular circumstances of the instant case we are of the opinion that the general rule applies because the defendants had notice *before trial* of the alleged illegal search and the results thereof and did not make a timely motion to suppress as required by such rule. No case has either been cited or called to our attention which abrogates this rule, and we find on the record in this case that the defendants do not come within any of the exceptions thereto.

Under the federal rule evidence secured through unlawful search and seizure by state officers not acting directly or indirectly in behalf of the United States is admissible in a prosecution in the federal courts. *Aldridge* v. *United States,* 67 F.2d 956; *Shushan* v. *United States,* 117 F.2d 110; *Miller* v. *United States,* 284 U. S. 651, (certiorari denied). See also 134 A.L.R. 827; 150 A.L.R. 576. In the instant case the search and seizure was made by police officers

of the city of Providence, accompanied by officers of the city of Cranston. No federal officers were involved.

The defendant Cairo had knowledge before trial of the alleged illegal search and seizure, for he had previously filed a motion to suppress the evidence obtained thereby in another case charging him with possession of burglar's tools. As to the defendant Silvio he takes nothing by these exceptions, for it is well settled in the law that the only person who can set up the claim that his constitutional rights have been invaded is one who claims an unlawful search or seizure committed on premises occupied by him. Immunity from unlawful search or seizure is entirely personal and can be availed of only by the person wronged. In the instant case the premises searched were owned jointly by the defendant Cairo and his wife, and used by them and the family of Mrs. Rose Triplett. The defendant Silvio lived in another part of the city of Providence. No violation of a constitutional right is therefore involved as to him.

In our judgment the search complained of was not illegal, unlawful or unreasonable, since the evidence secured thereby was taken, not in that portion of the house used and occupied exclusively by the defendant Cairo and his wife, but in the cellar thereof, which was used in common by two different families, and to which both families had free access. As a joint owner of the premises searched Mrs. Cairo was possessed of an undivided interest therein, and in her own right as an occupant could undoubtedly give permission to search the house, or at least the cellar thereof, which was used by her in common with members of a different family.

Therefore the question as to whether Mrs. Cairo could give such permission as agent of her husband, so as to bind him by her action, is not involved in this case because there is evidence that in granting permission to make the search complained of she was not acting as agent for her husband but in her own right as a joint owner

and occupant of the premises. Upon all the evidence on this point in the record before us and the law herein discussed, we are of the opinion that the so-called "suppressed evidence" was properly admitted by the trial justice. All exceptions thereto grouped under category (1) are therefore overruled.

Treating next the exceptions relating to "admissions" which are grouped under category (2), the testimony with reference to such admissions is substantially, as follows. The state presented evidence tending to prove that after lengthy questioning both defendants admitted their complicity in the break at the People's Furniture Store and the taking of the money and other contents of the safe; that such admissions were taken down in shorthand by William L. Creegan (referred to in the testimony as William L. Kreegan), police clerk and stenographer, were typewritten by him, and then given to each defendant to read; and that in the presence of several police officers both defendants admitted that such statements were true, but refused to sign them. The state also presented testimony to show that the statements were made freely and voluntarily, without threats, coercion or promise of reward or leniency.

Both defendants admitted continuous questioning by the police, but denied making any such admissions or statements as claimed by them. The trial justice therefore properly instructed the jury to determine first whether such oral admissions were actually made. He instructed them further that, if they found that such admissions were made, they would not consider them if they were induced by threats or promises, but only if they were made voluntarily. He pointed out to the jury that this class of evidence is the weakest and most suspicious of all evidence and that the burden was upon the state to prove its claim with respect thereto beyond a reasonable doubt. In these instructions the determination as to whether such statements were in fact made and if so whether they were made voluntarily was

submitted to the jury under instructions from the court, which properly safeguarded the rights of the defendants. A careful examination of all the exceptions grouped under category (2) convinces us that they show no reversible error, and they are overruled.

Under category (3) the defendants have argued their exceptions to several motions which were denied by the court. Exception 98 is to the denial of defendants' motion to dismiss the indictment and discharge the defendants because of variance between the indictment and the evidence. This point will be treated more fully later in this opinion. Exception 104 is to the denial of defendants' motion for a directed verdict of acquittal. A careful consideration of the evidence leads us to the conclusion that the decisions of the trial justice on these and other similar motions were without error. In our judgment the conflicting evidence required that the case be submitted to the jury to determine whether or not the defendants were guilty of the offense charged by the state. These exceptions are overruled.

Exception 115 is to the ruling of the court in denying defendants' motion for a new trial. The jury and the trial justice had the advantage, which we do not have, of seeing the witnesses and hearing them testify. In denying this motion he exercised his independent judgment and approved the verdict rendered by the jury. Under our well-settled rule, where the evidence is conflicting we do not disturb the decision of the trial justice on a motion for a new trial unless we find that such decision was clearly wrong or that he has overlooked or misconceived material evidence. We have carefully considered his decision in the light of all the evidence and we are of the opinion that in reaching his conclusion he did not overlook or misconceive any material evidence and that such conclusion was fully justified by the evidence. This exception is overruled.

Under category (4) the defendants have argued certain exceptions to the charge of the court. Exception 113 is to that portion of the charge wherein the court asked the jurors "to consider whether the police had the consent of Mrs. Cairo who is a co-owner of that house." The exact language of the trial justice on that point was: "And so it is for you, Mr. Foreman and ladies and gentlemen, to determine whether or not, when the police went into the home of Joseph Cairo, they had the consent of Mrs. Cairo, whom the testimony shows to be a co-owner of that house, to make that search which resulted in the finding of certain tools which have been introduced in evidence * * *."

The defendants argue that a wife has no implied authority to bind her husband or to waive his constitutional rights. This claim is based upon the status of principal and agent and, while not cited by the defendant in his brief, is supported by the case of *Humes* v. *Taber*, 1 R. I. 464. But in the instant case the right of the wife to permit entry and search by the police officers is not predicated upon the doctrine of agency, but upon her right as a joint tenant and occupant, in common with others, of that portion of the house where the search was conducted by the officers. As we have indicated earlier in this opinion, the wife as such joint tenant, co-owner and occupant had ample authority in her own right to permit entry by the officers and a search by them. If as such joint tenant, co-owner and occupant she had not been related to either defendant, no question as to her right would arise. In our opinion her mere relationship to one defendant as his wife would not as a matter of law destroy that right which was personal to her. Exception 113 is overruled.

Exception 97 is to the denial of defendants' motion, at the conclusion of the state's case, that state's exhibits 1, 6, and 7 be suppressed. These comprise articles taken from the cellar of the Cairo house on the night of Decem-

ber 10, 1945. No motion to suppress evidence having been filed before trial, we are of the opinion that such motion came too late, as indicated by our earlier language in this opinion. This exception is overruled.

Under exceptions 98, 104, and 115, the last two mentioned being exceptions to the denial of their motions for a directed verdict of acquittal and for a new trial which we have already discussed, the defendants contend there is a fatal variance between the indictment and the evidence, because the indictment charges the defendants with breaking and entering "a certain building, to wit, the store of Alfred A. Geremia, Vincent Geremia and Louis Geremia, doing business as People's Furniture Store, with intent to commit larceny therein"; whereas the evidence showed that the partners in the business were Alfred A. Geremia, Vincent Geremia and Louis Geremia, *Jr.* Louis Geremia, father of Louis Geremia, Jr., owned the building in which the business of said People's Furniture Store was conducted.

"Junior" or its abbreviation "Jr." as added to the name of a person is mere matter of description and legally forms no necessary part of the name. It is not necessary to add the word to a person's name in a writ or other legal paper. *People* v. *Cook,* 14 Barb. 259, 299; *Bidwell* v. *Coleman,* 11 Minn. 78, 87. In *State* v. *Grant,* 22 Me. 171, it was held, in an indictment for larceny wherein the property charged to have been stolen was alleged to have been "the property of one Eusebius Emerson of Addison," and the proof was that there were in that town two men of that name, father and son, and that the property belonged to the son, who had usually written his name with *junior* attached to it, that *junior* was no part of the name and that the ownership, as alleged in the indictment, was sufficiently proved. See also *Wesley* v. *State of Texas,* 45 Texas Crim. Rep. 64.

We are in full accord with the above authorities and find no merit on the ground of variance in exceptions 98, 104 and 115.

Exception 116 is to the overruling by the trial justice of defendants' demurrers and pleas in abatement to the indictment. This exception was briefed and argued only as to the pleas in abatement, the third and fourth grounds of which questioned the sufficiency of the indictment, particularly with reference to the fact that the location of the building broken into was not given.

It appeared in evidence that the People's Furniture Store operated two stores in Providence, one located on Pocasset avenue and the other on Charles street. The evidence showed that the one broken into was located on Pocasset avenue. The third ground of the pleas is that the indictment fails to set forth the nature and cause of the accusation against the accused, as required by art. I, sec. 10, of the constitution of Rhode Island, and the fourth ground is that the indictment does not set forth the location of the building broken into and the address thereof, nor sufficient facts to preclude the defendants from being subsequently tried for the same offense in the event of an acquittal in the instant case.

We are of the opinion that the charge as laid satisfies the constitutional requirements of art. I, sec. 10, of the constitution of Rhode Island, and the provisions of G. L. 1938, chap. 625, §3. All the essential elements of the offense charged appear in the indictment, and the venue was properly laid. The fact that the defendants may require further particulars as to the address of the store which they are accused of entering, in order to properly prepare a defense, is not an insufficiency in the indictment. Such information is available by way of a bill of particulars under G. L. 1938, chap. 625, §3, clause 7. See also *State* v. *Davis*, 39 R. I. 276.

Conviction on the instant indictment is a valid bar to a new indictment for the same offense. Inasmuch as the trial here was on the merits and a stenographic report is available to prove with precision of what offenses the defendants were charged and convicted, they will be fully

protected in the event of a second charge for the same offense by reason of the availability of such stenographic record. Exception 116 is overruled.

We have considered all the other exceptions not herein disposed of either in general language or specifically treated by exception number, and we find them to be without merit. None of these exceptions discloses any reversible error.

All of the defendants' exceptions are overruled, and the case is remitted to the superior court for further proceedings.

CONDON, J., dissenting. I am of the opinion that the search of defendant Cairo's home without his consent and the seizure of his possessions therein were violations of article I, sec. 6, of the constitution of this state. The admission in evidence over his objection of those things was in my opinion tantamount to compelling him to give evidence against himself in violation of sec. 13 of that article, which guarantees an accused against being compelled in a court of common law to give evidence criminating himself. These rights are comparable in kind and degree to those contained in the fourth and fifth amendments of the bill of rights of the federal constitution, and are couched in almost identical language. The United States supreme court has always given those amendments a liberal construction according to their spirit rather than a narrow construction consonant merely with their letter. It is my opinion that the same rule should guide this court in construing secs. 6 and 13 of our state constitution. I think that the court, in the instant case, has not followed that salutary rule and therefore I cannot subscribe to their opinion insofar as the defendant Cairo is concerned.

The application of that rule by the supreme court, persisted in despite criticism of learned commentators on the law of evidence, has resulted in it being now firmly settled federal law that evidence obtained by search and seizure by federal officers in violation of the fourth amendment

is inadmissible against the accused whose right to be free from such search and seizure has been violated. *Boyd* v. *United States,* 116 U. S. 616. In that case the supreme court linked the fourth and fifth amendments together insofar as the clause against self crimination in the latter amendment was concerned. This has been called by a distinguished authority in jurisprudence as the great creative act of the court. "The Supreme Court's Construction Of The Self-Incrimination Clause," Corwin, 29 Mich. L. Rev. 203. In that article, after reviewing a series of cases which reaffirmed and followed the *Boyd* case, the author further says that the principle enunciated in that case "has undergone not only decisive ratification by the Supreme Court, but also progressive acceptance in the state courts, until today it is the prevailing doctrine in the majority of jurisdictions that have had occasion to express themselves on the point in a legally binding way." That article was written in December 1930. Since then the supreme court has, if anything, given greater strength and wider scope to the underlying principle of the *Boyd* case.

The supreme court as presently constituted is a vigilant and vigorous protector of the rights guaranteed in the bill of rights and especially the fourth and fifth amendments. See *United States* v. *Di Re,* 332 U. S. 581, and *Trupiano* v. *United States,* 334 U. S. 699. In the latter case the court repeated a declaration which it had made in one form or another in numerous cases since the *Boyd* case. It said at page 700: "* * * the Fourth Amendment is a recognition of the fact that in this nation individual liberty depends in large part upon freedom from unreasonable intrusion by those in authority. It is the duty of this Court to give effect to that freedom." In the former case answering the argument of necessity the court stated its lack of sympathy with such argument as follows at page 595: "It is said that if such arrests and searches cannot be made, law enforcement will be more difficult and uncertain. But the

forefathers, after consulting the lessons of history, designed our Constitution to place obstacles in the way of a too permeating police surveillance, which they seemed to think was a greater danger to a free people than the escape of some criminals from punishment." If the supreme court had not adopted the view that evidence obtained in violation of the fourth amendment must be excluded, Professor Zechariah Chafee, writing on "The Progress Of The Law, 1919-1922," says that that amendment would be a dead letter, and he adds that *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385, which applied the principle further, gives added strength to the constitution. 35 Harv. L. Rev. 673, 695.

Did the defendant in the case at bar act seasonably to exclude the illegal evidence? I think he did. In my opinion he was not bound under our practice to move before trial to suppress the evidence. There is no greater interruption to the trial to pause and inquire into the legality of evidence alleged to have been seized in violation of the fourth amendment than there is to inquire into the legality of a confession which involves the constitutional guaranty against self crimination. There are other occasions also when a trial is interrupted for the purpose of collateral inquiry such as the qualifying of an expert witness and establishing the competency of a child witness. Therefore the common-law rule should not be applied against due inquiry as to whether evidence has been obtained in violation of a constitutional right of the accused. It is the duty of this court to protect an accused in the enjoyment of such rights. Article I of our state constitution expressly declares that the enforcement of such rights "shall be of paramount obligation in all legislative, judicial, and executive proceedings."

The federal rule on this matter is no longer a hard and fast one requiring a motion for return of or to suppress such evidence before trial. In *Agnello* v. *United States,* 269 U. S. 20, 34, no such motion was made; nevertheless

the court declared that the illegal evidence should be excluded. "Where, by uncontroverted facts," the court said, "it appears that a search and seizure were made in violation of the Fourth Amendment, there is no reason why one whose rights have been so violated and who is sought to be incriminated by evidence so obtained, may not invoke protection of the Fifth Amendment immediately and without any application for the return of the thing seized."

Previously the court had said in *Gouled* v. *United States,* 255 U. S. 298, 313, of the rule that the court would not pause in the course of a trial to inquire into the legality of otherwise competent evidence, that it was merely one of practice and "must not be allowed for any technical reason to prevail over a constitutional right." See also *Amos* v. *United States,* 255 U. S. 313. In his article in the Michigan Law Review, *supra,* Professor Corwin says, at page 26, that as a result of the *Gouled* and *Amos* cases the rule requiring action before trial is now "confined practically to cases in which the accused has been evidently negligent in the assertion of his rights." For a like view see "Recent Developments In The Law Of Search And Seizure," Fraenkel, 13 Minn. L. Rev. 1.

Even under the federal rule, therefore, defendant's objection to the admission of the articles seized in a search of his home without his consent ought to have been sustained. There was no controversy as to the manner in which the articles were obtained. The state in introducing the evidence admitted that they were obtained as a result of a search without a warrant and without defendant's consent thereto. In such circumstances there was indisputably a violation of sec. 6 of our state constitution, unless it can be said that Mrs. Cairo consented to the search either as the agent of her husband or in her own right as a co-owner of the house with her husband. In my opinion neither ground is sound in law.

Assuming for the moment, without deciding, that Mrs. Cairo actually gave such free and voluntary consent, her action would not bind her husband and foreclose him from the assertion of his constitutional right. In the first place a wife is not the agent of her husband to license a search of his house for stolen goods. *Humes* v. *Taber,* 1 R. I. 464. In the second place ownership of the house in common with her husband does not confer authority upon the wife to license a search of the house and a seizure of her husband's possessions. If mere ownership of title were sufficient to enable the owner to authorize a search of the premises then any landlord could authorize a search of his tenant's home and thus deprive him of the full protection of the constitutional privilege. That is absurd.

The rights guaranteed by secs. 6 and 13 of the state constitution are personal to the accused. They are neither limited by nor depend upon any mere question of title. A man's home is his castle whether it be a mansion which he owns or a tenement or room which he rents. Mrs. Cairo's co-ownership of her husband's house was therefore no more potent to vest her with authority to waive his constitutional rights as against the state than it would have been if she had no title at all to the property. Neither as his wife nor as his co-tenant of real property were those rights in her keeping. In my opinion it is unfortunate that this court has today by its decision given the sanction of law to such a claim.

But even if I could concur that such was the law I should nevertheless feel constrained to hold that in the circumstances in which Mrs. Cairo was placed on the night the accused's home was searched there was and could be no real free and voluntary consent on her part. The facts here are not unlike those in *Amos* v. *United States, supra,* where the supreme court refused to inquire into the question of consent, saying: "* * * for it is perfectly clear that under the implied coercion here presented, no such waiver was intended or effected." I take the

same view of Mrs. Cairo's situation in the case at bar. The Kentucky supreme court in a similar case where a wife invited into her husband's house state officers who had come without a warrant to search the premises held that there was implied coercion of the wife and that the articles seized should have been excluded as evidence upon the defendant's objection thereto. *Duncan* v. *Commonwealth,* 198 Ky. 841. See also *State* v. *Lindway,* 131 Ohio St. 166.

Since I am of the opinion that the evidence was clearly obtained in violation of sec. 6, that the admission of it against Cairo was a further violation of sec. 13, and that he seasonably asserted those constitutional rights, I think that he is entitled to a new trial. In view of this conclusion, I express no opinion on other questions raised by Cairo. As to the defendant Silvio, I concur in the court's opinion.

*John H. Nolan,* Attorney General, *Archie Smith,* Assistant Attorney General, for State.

*Aram A. Arabian, Angelo Cianciarulo,* for defendants.