**Willie B. MURRAY, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 7615.**

United States Court of Appeals
Tenth Circuit.

Sept. 17, 1965.

---

Eugene T. Hackler, Olathe, Kan., for appellant.

Thomas E. Joyce, Asst. U. S. Atty. (Newell A. George, U. S. Atty., Dist of Kansas, was with him on the brief), for appellee.

Before BREITENSTEIN, HILL and SETH, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This case is now before us on a remand from the Supreme Court of the United States. In our first opinion we held that appellant Willie Murray did not have standing to object to a search which resulted in the seizure of evidence used against him at the trial. See Murray v. United States, 10 Cir., 333 F.2d 409. The Supreme Court vacated our judgment and remanded the case for consideration of the "validity of the arrest of Henry Murray and of the search for and seizure of the money in question as an incident of such arrest." See Murray v. United States, 380 U.S. 527, 85 S.Ct. 1345, 14 L.Ed.2d 266.

Shortly after 3:00 A.M. on April 6, 1962, the sounding of a burglar alarm at a federally insured bank in Mission, Kansas, caused an immediate investigation. Local police officers found that a burglary had been committed and that the burglars had apparently left in haste, dropping considerable amounts of money near the bank. About an hour to an hour and a half later the officers noticed a 1959 Pontiac car in front of police headquarters, three blocks from the bank. The car had not been there two hours earlier, did not have the condensation from heavy dew found on other cars in the area, and the hood was warm. It bore Missouri license plates which the officers immediately checked. The plates were found to have been issued to a Mr. Watson, 3421 Michigan Avenue, Kansas City, Missouri, for a 1954 Ford. The officers then investigated the car. The engine was warm. The ignition keys were on the floor on the driver's side. In the glove compartment detectives found the car's registration, in the name of Mr. Watson, and billfolds containing identifications of appellant Willie Murray and of Henry Murray. Willie was identified from a photograph in his billfold as having worked before April, 1961, for the janitorial service which cleaned the bank at night. He had been provided a key to the bank while he worked there.

A county detective then went to Kansas City, Missouri, and enlisted the aid of the police there in arresting Willie and Henry.[1] He accompanied two Kansas City detectives, one of whom knew Henry, a juvenile, as a result of a previous investigation of a "strongarm robbery," to 3421 Michigan, the address the local police had for Willie and Henry, and then to 3411 Michigan.[2] The latter address is an old home converted into apartments. The officers went to the second floor and knocked on a door.[3] Albert Murray opened the door. One of the officers identified himself and, through the open door, saw Henry apparently asleep on a couch. The officer told both Albert and Henry that they were under arrest. A search of the premises followed.[4] Beneath the floor of the bathroom the offi-

---

1. Before that detective arrived in Kansas City, and without his knowledge, Willie had been arrested in Mission.

2. Both 3421 and 3411 Michigan were owned by Watson and his wife, the stepfather and mother of Willie and Henry.

3. This occurred about 8:45 A.M. on the day of the burglary.

4. A description of the premises is found in our first opinion, 333 F.2d 409, and will not be repeated.

cers found $1,030 in currency, part of which was wrapped with tapes bearing marks made by stamps used at the Mission bank.

Willie, Albert, and one Thomas were indicted in federal court for violations of 18 U.S.C. § 2113(a) and (b). An appropriate motion was made under Rule 41(e), F.R.Crim.P., to suppress the evidence obtained by the search and the motion was denied. At the trial objections to the introduction of this evidence were overruled. Albert and Thomas were acquitted and Willie was found guilty by the jury. No federal charges were made against Henry but state charges were filed against him and later dismissed.

■■ The constitutional validity of the search and subsequent seizure of the money depends on the constitutional validity of the arrest of Henry. This in turn depends on whether the officers, at the moment of the arrest, had probable cause to make it. Probable cause depends on whether at that moment the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that Henry had committed or was committing an offense.[5] Here the officers were pursuing the investigation of a felony, bank burglary, and it was not necessary that the offense be committed in their presence but only that they had reasonable cause to believe that Henry was guilty of a felony.[6] The Supreme Court has said: "The rule of probable cause is a practical, non-technical conception affording the best compromise that has been found for accommodating * * * often opposing interests." [7]

■ Two factors enter into a determination of probable cause, the commission of a criminal offense and the identity of the person as a perpetrator of that offense. Here the commission of the offense may not be questioned. The physical evidence apparent to the officers showed a breaking and entering and the taking of the money of the bank. The question is whether the officers had reasonable grounds for connecting Henry with that crime.

■ Consideration must first be given to the search of the Pontiac. Between 2:00 and 2:45 A.M. on the day of the burglary an officer on cruiser patrol had passed the spot where the car was found parked and the car was not there. He later saw the car at about 4:30 to 4:45 A.M. and reported to officers investigating the burglary. They checked the Missouri license and were told that it had been issued to a Ford. These circumstances plus the nearby burglary were reasonable grounds for a further investigation of the car. They found the engine warm and saw the keys on the floor. The situation was such that they were justified in examining the glove compartment where they found the billfolds of Willie and Henry. We believe that a prudent man would have acted as the officers did.

Willie was promptly identified as a former employee of the janitorial service used by the bank. The addresses shown on the car registration and in the billfolds were in Kansas City, Missouri. The investigating officers told a detective from the local sheriff's office what they had found. The detective went to the Records Bureau of the Kansas City Police Department and found that Henry had previously been arrested by a Detective McKinney. He then went to the Robbery Bureau and asked that McKinney be assigned to help him. McKinney and another Kansas City detective accompanied the Kansas detective to the Michigan Avenue address where McKinney arrested Albert and Henry in the circumstances heretofore related.

5. Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142.

6. Carroll v. United States, 267 U.S. 132, 156–157, 45 S.Ct. 280, 69 L.Ed. 543.

7. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879.

The two were taken to the police station. Shortly after their arrival there an attorney phoned, then came to the station, and talked to them for about 45 minutes out of the presence of any officer. Extradition was waived and Albert and Henry were taken to Kansas.

Probable cause is something more than mere suspicion [8] and something less than evidence which would sustain a conviction.[9] Probable cause is concerned with probabilities. As the Supreme Court said in Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310: "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." In the case before us the local officers were investigating a felony which had just been committed. They were thorough but restrained in their actions. They acted as "reasonably discreet and prudent" men,[10] and used sober judgment. Their conduct was properly responsive "both to the needs of individual liberty and to the rights of the community." [11] In our opinion the arrest of Henry was lawful.

The search was incident to the lawful arrest of Henry and was made immediately thereafter. The arrest occurred at the door of a second-floor apartment then and previously occupied by Henry and his brothers with the permission of their parents, the owners of the building. The money was found under the floor of a hall bathroom used by those occupying the second floor. The only other occupant of the second floor was Thomas who was indicted with Willie and acquitted. The use of the bathroom was either with the permission of the parents as owners or of the tenant Thomas. We take the action of the Supreme Court as holding that Willie had standing to complain of the search because of his connection with the premises. Henry had the same relationship to the premises as did Willie. The right to search and seize as an incident to a lawful arrest "extends to things under the accused's immediate control * * * and, to an extent depending on the circumstances of the case, to the place where he is arrested." [12] In the circumstances here presented, we believe that the search of the bathroom was reasonable.

The search revealed a part of the fruits of the crime. The fact that Henry was not subsequently charged with any federal offense is immaterial. The only objection made to the evidence was the claim of an illegal search and seizure. All facts having rational probative value are admissible unless some specific rule forbids.[13] Here no rule forbids and the product of the search and seizure was properly received in evidence.

Affirmed.

SETH, Circuit Judge (dissenting).

By reason of the remand to us of this case by the Supreme Court with the direction that it be reconsidered with reference to the arrest of a third person, we must assume that the Court regarded the appellant's relationship to the premises searched to be such that he had standing to object to the introduction into evidence of objects seized. The evidence with which we are here concerned was seized during a search of these premises. For want of a better term to refer to the premises in relation to appellant, they will be referred to as "protected."

The constitutional right of appellant as to the protected premises is of course a personal one which he may waive, but no contention is made that he did so. The government argues that instead he lost the right by an event over which

8. Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

9. Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134.

10. Husty v. United States, 282 U.S. 694, 701, 51 S.Ct. 240, 75 L.Ed. 629.

11. United States v. Ventresca, 380 U.S. 102, 112, 85 S.Ct. 741, 748, 13 L.Ed.2d 684.

12. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777.

13. 1 Wigmore on Evidence, 3d ed., 293.

appellant had no control, and which took place on the premises in his absence and apparently without his knowledge. This event was the arrest of another person, Henry Murray, brother of appellant. A search incident thereto was made which thoroughly covered the protected premises and resulted in the seizure of the evidence in question. This arrest at the particular place was a matter of chance determined by the whereabouts of the person arrested at the time of his arrest.

The arrest of this Henry Murray on the premises may have been with probable cause, the search incident to such arrest, and the search proper as to its extent, but the constitutional rights of appellant should not stand or fall upon such circumstances unrelated to him. They should not depend upon whether the place of arrest of Henry Murray was on the premises or elsewhere, and whether the arrest was legal or illegal. It is even questionable whether appellant has standing to assert that his brother's rights were violated by an illegal arrest.

The government's argument is that once evidence or the fruit of a crime, as here, has been seized in a manner which is legal as to any one person it is thereby legally seized as to everyone regardless of their relationship to the premises or events. This is certainly a universally recognized and a time-honored position, but the result thereof is inconsistent with the existence of any substance in the rights of appellant which the Supreme Court found to exist. There would be no real purpose in recognizing them if they can be so easily lost by the acts of others.

If the right of appellant to be protected against unreasonable searches is of such stature as to be recognized to be a fundamental one as in Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399, it is difficult to understand how it could be lost by such a combination of circumstances unrelated to any action on appellant's part, and all completely beyond his control.

The circumstances are in some respects related to the cases concerned with a consent to search given by another member of the accused's family or with consent by one co-user or by one cotenant or other owner of an interest in the premises. In many of such cases consent is found to be effective as to the accused, but the decisions are based on the voluntary nature of the act of a person with "control" or "supervision" of the property.[1] In the case before us there was no voluntary act by anyone who had any connection with the property. Henry Murray's arrest in the building indicates no consent to anything, and the fact that the premises would be protected also as to him does not alter the situation because reliance is on the arrest alone and not upon any voluntary acts. Under the government's theory the arrest could just as well have been of a complete stranger.

The legality of the seizure as to appellant, and to his rights should be the determining factor. He made proper objection to the evidence as having been seized in violation of his rights. Henry Murray is not a party in this action, he was not prosecuted, and whether the seizure was or was not a violation of his rights would not seem to be a sufficient basis for a decision as to appellant's rights.

1. For example see Roberts v. United States, 332 F.2d 892 (8th Cir.) where consent of the wife was secured and the evidence used in a prosecution of the husband, but in Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, the court did not pass on the effectiveness of a wife's consent. Other cases with diverse holdings include: State v. Cairo, 74 R.I. 377, 60 A.2d 841 (Sup.Ct.); Stein v. United States, 166 F.2d 851 (9th Cir.); Morris v. Commonwealth, 306 Ky. 349, 208 S.W.2d 58; People v. Shambley, 4 Ill.2d 38, 122 N.E.2d 172; Cofer v. United States, 37 F.2d 677 (5th Cir.); United States v. Sferas, 210 F.2d 69 (7th Cir.) (partners); Driskill v. United States, 281 F. 146 (9th Cir.); United States v. Sergio, D.C., 21 F.Supp. 553; and State v. Kinderman, Minn., 136 N.W. 2d 577.