232 A.2d 781.

STATE *vs.* FREDERICK ROBERTSON.

AUGUST 8, 1967.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

624

PAOLINO, J. This indictment charging the defendant with the murder of one John W. Koniak, Jr. was tried before a justice of the superior court sitting with a jury and resulted in a verdict of guilty of murder in the second degree. After the defendant's motion for a new trial was denied, he was sentenced to life imprisonment. The case is here on his bill of exceptions to the denial of such motion and to certain rulings during the trial.

The nature of defendant's exceptions is such that it is unnecessary to discuss the evidence in detail. It suffices to point out that on April 20, 1963, the deceased was found slumped over the steering wheel of his truck. The medical

testimony indicates that he received two gunshot wounds to his head which caused his death. The defendant was subsequently arrested, charged, indicted and found guilty. He has briefed and argued his exceptions under four main points; for convenience we shall treat them in like manner.

Under point I defendant has briefed and argued a group of exceptions on which he bases his contention that the search of his tenement was illegal because it was made without a search warrant, without his consent, and prior to his arrest. Consequently, he argues, the evidence obtained through such search, to wit, the revolver allegedly used in the killing, was inadmissible. The evidence does not support defendant's claim that his tenement was searched and, therefore, assuming that this question is properly before us, we hold that defendant has no standing to raise the claim that his constitutional rights against unlawful search and seizure have been violated. *State* v. *Cairo,* 74 R. I. 377, 60 A.2d 841. See also concurring opinion of Joslin, J., in *State* v. *Dufour,* 99 R. I. 120, 129-137, 206 A.2d 82, 89-91.

Insofar as pertinent to a consideration of the issues raised under point I, the evidence is as follows. A Mr. and Mrs. Frye owned a dwelling house at 14 Emmett street in the city of Providence in which they lived on the second floor and rented one room on the third floor to defendant and another to one Howie Clement. There are also two other rooms on the third floor which were unrented, one of which is at the head of the rear stairs. In the latter room Mr. Frye had stored some clothes and a zipper bag belonging to one Marc Jones, who had occasionally roomed with Mr. and Mrs. Frye in their former home.

On April 24, 1963, two Providence police officers, together with Marc Jones, went to the Frye residence. The police officers informed Mr. Frye that they would like to look at the third floor room where Marc Jones's articles were stored. After the conversation with Mr. Frye, the four of them went to that room. At the request of the police officers

Marc Jones opened the zipper bag. It contained a revolver which Jones said belonged to him and which was subsequently admitted in evidence as state's exhibit 46. The state presented expert testimony that this revolver was the weapon used in killing John W. Koniak, Jr.

There is no evidence that the room in which the gun was found was rented to defendant; nor is there any evidence that, prior to the search of the unrented room, the police had searched the room rented and occupied by defendant. Moreover, defendant testified that while he lived at 14 Emmett street he never went into the room in which Marc Jones's gun was found. Since the search complained of did not involve a premises occupied by defendant, he has no standing to complain. As the court said in *State* v. *Cairo*, *supra*, at 385, 60 A.2d at 845:

> "* * * the only person who can set up the claim that his constitutional rights have been invaded is one who claims an unlawul search or seizure committed on premises occupied by him. Immunity from unlawful search or seizure is entirely personal and can be availed of only by the persons wronged."

We next consider a group of exceptions challenging the correctness of certain rulings by the trial justice relating to the examination of three witnesses, two of whom were presented by the state and the third by defendant. For convenience we shall treat such examination separately.

The first relates to the examination of Pearlie May Dennis, defendant's girl friend, who was called as a witness by the state. It appears from the transcript that her answers to certain questions by the prosecutor were inconsistent with prior statements made by her to the police which indicated that three weeks before the April 20, 1963, incident she had seen defendant with a gun and told him to get rid of it. The prosecutor pleaded surprise and requested permission by "voir dire" to examine the witness in the absence of the jury. The prosecutor then argued further,

in the absence of the jury, that he had been taken by surprise by the answer of the witness to certain other questions, and asked to examine the witness in the absence of the jury.

The defendant contends that the trial justice erred in permitting the prosecutor to conduct a "voir dire" examination of the witness. Although the prosecutor used the term "voir dire," we shall treat his request merely as a motion to examine the witness, in the absence of the jury, to prove that he was surprised by the answers of the witness which were contrary to a written statement she had previously given. After the examination the jury was returned and the prosecutor was allowed to ask the witness questions which showed she had made a prior inconsistent statement. We find no error in the ruling of the trial justice.

Where a party is surprised by the answer of his own witness the trial justice may in his discretion permit him to inquire whether the witness has made prior inconsistent statements. 3 Wigmore, Evidence §904, p. 397, §905, p. 404, §918, p. 441 (3d ed. 1940). As the court said in *Barker* v. *Rhode Island Co.*, 35 R. I. 406, 409, 87 A. 174, 175:

"* * * It is settled that the judge presiding at a trial may in his discretion permit counsel who is surprised by the answer of his own witness to ask if the witness has not on some previous occasion made a statement different from the one testified to. This is permitted not for the purpose of laying the foundation for the impeachment of his own witness, but for the purpose of permitting an explanation of the contradictory statement and if the explanation should not be satisfactory for the purpose of neutralizing the effect of the testimony. Such interrogation is admissible only when the judge is satisfied that the counsel is surprised by the adverse testimony. * * * The extent, however, to which a court shall go in permitting a relaxation of the ordinary rule in regard to the cross-examination of counsel's own witness is a matter entirely within the sound judicial discretion of the jus-

tice presiding. Unless there has been an abuse of this discretion the refusal of the trial court to permit such question to be asked is not a ground for exception." See also *Manocchio* v. *Pettine,* 84 R. I. 167, 122 A.2d 152; *State* v. *Saccoccio,* 50 R. I. 356, 147 A. 878; *Hildreth* v. *Aldrich,* 15 R. I. 163, 1 A. 249.

In *Manocchio* v. *Pettine, supra,* at 171, 122 A.2d at 154, the court stated the rule as follows:

"* * * Ordinarily, aside from the statute, a party calling a witness may not impeach him. *Souza* v. *United Electric Rys.,* 51 R. I. 124. This rule may be relaxed in the sound discretion of the trial justice where the circumstances seem to require it in the interest of justice and especially when the element of surprise is present."

The parties have cited no case by this court, nor have we found any, which sets forth the procedure which should be followed in conducting such an examination. But this problem did arise in *State* v. *Gallicchio,* 44 N. J. 540, 545, 210 A.2d 409, 412, where in answer to defendant's contention that the trial court improperly permitted the use of neutralization, the court said:

"* * * By neutralization is meant the erasure or cancellation of unexpected harmful testimony by a showing—either by cross-examination or by other witnesses—that the witness has made a statement in conflict with his present testimony. Where a party calls a witness who, to the surprise of the proponent, testifies in conflict with a previous statement, and to the harm of the proponent's case, the proponent is permitted to utilize the previous statement 'to neutralize' the witness's harmful testimony."

And at page 547, *supra,* 210 A.2d 413, the court went on to say that when a proponent has no prior indication

"* * *and is surprised by the witness's contradictory testimony, the trial court should, at side bar, determine the propriety of its invocation. Preliminarily the trial court must decide that the party has a prior statement of the witness which is contradictory to his present

testimony, that the party is without prior knowledge that the witness would testify contrary to such prior statement (i.e., the party is surprised thereby), and that the present testimony is harmful in that it is prejudicial or detrimental to the proponent's case. Its findings, if favorable to the proponent, should not be revealed to the jury."

The procedure followed in the case at bar was substantially similar to that in *State* v. *Gallicchio*. As we have already stated, the trial justice allowed the prosecutor to examine the witness, in the absence of the jury, to prove surprise, and then allowed him, in the presence of the jury, to ask the witness questions which showed she had made a prior inconsistent statement. We find no abuse of discretion and therefore hold that the trial justice did not err in allowing the examination in question. See *Selden* v. *Metropolitan Life Ins. Co.*, 157 Pa. Sup. 500, 43 A.2d 571.

The second error claimed by defendant relates to the examination of one Norman Silva, who had also been presented as a witness by the state. While under direct examination by the prosecutor he refused to answer a question concerning defendant's possession of a gun. The prosecutor once again pleaded surprise and, in the absence of the jury, requested that he be permitted to question the witness, in the absence of the jury, regarding prior inconsistent statements by the witness. What we said above with respect to the authority of the trial justice to permit such an examination applies here. We find no abuse of discretion by the trial justice in permitting the prosecutor to examine the witness, in the absence of the jury, concerning prior inconsistent statements.

However, during such examination, the witness refused to answer certain questions pertaining to defendant's possession of a gun. The trial justice, in the absence of the jury, tried to find out from the witness his reasons for his refusal to answer. His reply was in substance that he re-

fused to answer for reasons of his own, which he refused to divulge. He was then asked by the trial justice whether his refusal was based on his belief that his answer might incriminate him and he replied in the negative. The trial justice then ordered him to answer the question and warned him that his failure to do so would constitute direct criminal contempt.

The witness was again examined later that day, in the absence of the jury, and this time answered questions about defendant's possession of a gun and admitted that he had had a conversation with defendant, but refused to say what the conversation had been about. He said his refusal was based on a feeling of fear and loyalty for defendant, and not on any belief that his answer might incriminate him.

The trial justice noted that it appeared that the witness was in contempt but stated that he would give him one more opportunity to consider his position. The trial justice then placed the witness in the custody of the police department and at the request of the prosecutor he was held until the next court day. It appears that he was in the custody of the police from that day, which was a Friday, until the following Tuesday. The court did not meet on Monday because of a holiday.

When he was returned to court on the following Tuesday, Mr. Silva testified about the conversation he had with defendant and then the jury was brought in, and he testified in its presence and answered essentially the same questions which he had previously refused to answer. There is no evidence that the witness was induced to do anything except to answer pertinent questions and to tell the truth. In the circumstances we find no error.

It is well settled that a trial judge is vested with broad discretion in the conduct of a trial. He has power to control the course of the trial, subject only to compliance with statutory or constitutional requirements. *Commonwealth*

v. *Dress,* 354 Pa. 411, 47 A.2d 197. He has the duty to supervise and control the examination of witnesses, *State* v. *Palm,* 123 Conn. 666, 197 A. 168, and to compel a recalcitrant witness to testify, *Scott* v. *State,* 169 Ark. 326, 275 S. W. 667, *Benton* v. *State,* 58 Ga. App. 633, 199 S. E. 561. See *In re Holbrook, Petitioner,* 133 Me. 276, 177 A. 418, which discusses the power of a trial judge to punish for contempt a witness who refused to answer legitimate questions.

Although the main thrust of defendant's challenge is directed to the so-called voir dire examination of Norman Silva, and not to the fact that he was placed in the custody of the Providence police department, we believe that in such circumstances the better practice is to place the witness in the custody of the sheriff as an officer of the court. However, since the defendant makes no claim that the witness was subjected to any threats or intimidation of any kind while in police custody, or that his testimony was in any way influenced by anything that may have taken place during the almost 100 hours he was in police custody, we find no prejudicial error.

Nor is there any merit in defendant's contention that "* * * perhaps the weight of Silva's testimony would have been affected" if the jury had known that the witness had refused to testify three times during the so-called voir dire examination and that he was now testifying under a threat of criminal contempt. As we have previously pointed out, there is no evidence that the witness was induced to do anything except to answer pertinent questions and to tell the truth.

We come now to defendant's contention that the trial justice erred in directing defendant's counsel to examine one Isadore Shechtman, one of defendant's witnesses, in the absence of the jury. The problem arose as follows. While defendant's counsel was questioning the witness on direct examination, the prosecutor, at a bench conference with

the stenographer present, but not within the hearing of the jury, requested that the witness be examined in the absence of the jury because he feared that the questions which were going to be asked of the witness would be prejudicial.

The trial justice excused the jury and directed defendant's counsel to question the witness in the absence of the jury, whether the testimony he intended to elicit from the witness would be material, and whether it would be prejudicial to the further continuation of the trial. After the examination was completed, the trial justice permitted defendant's counsel to question the witness in the presence of the jury. It appears from the transcript that none of the testimony was excluded. In the circumstances we perceive no prejudicial error. See *Drewett* v. *United Electric Rys.*, 57 R. I. 169, 174, 188 A. 877, 879, for a discussion of the discretionary power of a judge to excuse a jury during a trial.

Under point III defendant has briefed and argued a group of exceptions challenging certain evidentiary rulings which he argues were prejudicially erroneous.

Under exceptions 167 and 168, defendant argues that certain evidence should have been excluded because it was hearsay. It appears that one Hulet Hill was called as a witness by the state and was asked by the prosecutor how he recalled the approximate time he left a certain club on the night of Friday, the 19th of April. The witness replied that he understood that a Mr. Herbert Ross had to pick up his wife at 10 o'clock in Pawtucket. He was then asked if any attention had been brought to him about Mr. Ross having to go to Pawtucket. He replied in the affirmative and testified that Mr. Ross said he was late, and that Mr. Ross looked at the clock and said: "It is ten minutes of ten." Mr. Hill testified that when he got to his car across the street, defendant walked up to him and they had a conversation.

The defendant contends that Mr. Hill's testimony about Mr. Ross' statement was hearsay, and since time was material in the chain of circumstances the admission thereof was prejudicial. Assuming that such testimony was hearsay, it was not prejudicial for the reason that there was other evidence in the record, including defendant's own testimony, that he had been at the club in question around 10 o'clock and that Mr. Hill had brought him to his residence from the club. See *State* v. *Marderosian*, 87 R. I. 165, 139 A.2d 79. Since defendant testified substantially to the same effect as Mr. Hill, the latter's alleged hearsay testimony was merely cumulative and not prejudicial. See *State* v. *Busch*, 59 R. I. 382, 391, 195 A. 487, 491-492.

We come now to defendant's exception 234 under which he argues that the trial justice erred in sustaining a certain objection made by the state and in denying a certain offer of proof made by defendant. Lieutenant Vincent J. O'Connell of the Providence police department testified in direct examination that state's exhibits 46, the revolver, and 31 and 32, the bullets, were returned to his department by the F.B.I. While cross-examining Lieutenant O'Connell defendant's counsel asked him the following question.

"304. Q: Did you receive a report from the F.B.I. Laboratory in Washington on State's Exhibit 46 for identification, State's Exhibits 31 and 32 for identification?"

The trial justice sustained the state's objection to that question. It does not appear that any exception was taken to such ruling. The defendant's counsel then requested a bench conference, during which he made a certain offer of proof and an oral motion that the state produce an F. B. I. report which defendant said had been prepared concerning exhibit 46. The state objected to the offer of proof on the ground that there was no evidence in the direct examination concerning any exhibits. The trial justice rejected the offer of proof and took the motion to produce under advisement.

Subsequently, the state called a special agent of the F. B. I. as a witness. He testified that he made certain tests and examinations of exhibits 46, 31 and 32 and "* * * concluded that the two bullets, exhibits 31 and 32 could have been fired from this particular revolver." During his cross-examination of the special agent, defendant did not request the F. B. I. report. After the examination of the special agent was completed, the trial justice asked defendant's counsel whether or not the testimony of the special agent had obviated the necessity of the court ruling on the motion to produce. Defense counsel's answer was: "No, it does not. I am satisfied that the motion may be withdrawn, Your Honor."

Although defendant now claims that this was not a withdrawal of his motion, it seems to us that the trial justice concluded that defendant had withdrawn his motion because he made no ruling and no request for a ruling was made and no exception was taken to the trial justice's action.

In any event there is no evidence that the state suppressed or withheld any evidence. The special agent—who had examined the exhibits in question and who had made the report which defendant claimed was being withheld—was presented as a witness. The defendant had the opportunity to ask for the report during the examination of the special agent who had testified that the bullets could have been fired from exhibit 46, or through another gun. He did not go as far as Dr. Harold C. Harrison, who testified unqualifiedly that the bullets were fired by exhibit 46.

It would unduly prolong this opinion were we to discuss the cases cited by defendant. It suffices to say that we have examined them, but find that they are not applicable here. The contentions which defendant has briefed and argued under exception 234, in our judgment, lack merit.

The remaining exceptions which defendant has briefed under point III relate to, and are based on, defendant's argument challenging the admissibility of exhibit 46. The determination of the issues raised by these exceptions is controlled by our conclusions in answering defendant's contentions under point I of his brief and, therefore, require no further consideration.

We come finally to the defendant's exception to the denial of his motion for a new trial. In his decision denying the motion the trial justice discussed and analyzed the evidence at great length and concluded that the evidence supported the jury's finding that the defendant was guilty beyond a reasonable doubt. We have carefully considered his decision in the light of all the evidence. In our opinion he did not misconceive or overlook any material evidence in the case. On the contrary we are persuaded that he exercised his independent judgment in passing on the weight of the evidence and the credibility of the witnesses and in so doing reached the same conclusion as the jury. In our judgment his conclusion is fully justified by the evidence.

All of the defendant's exceptions are overruled, and the case is remitted to the superior court for further proceedings.

Motion for leave to reargue denied.

*Herbert F. DeSimone*, Attorney General, *Donald P. Ryan*, Special Assistant Attorney General, for plaintiff.

*James Cardono*, Public Defender, *Eugene F. Toro*, Special Counsel, for defendant.