**Francis E. LaCHAPPELLE, Petitioner, Appellant,**

v.

**John MORAN, Director, Department of Corrections, Respondent, Appellee.**

No. 82–1308.

United States Court of Appeals, First Circuit.

Argued Dec. 9, 1982.

Decided Feb. 2, 1983.

---

9.   Azoff, *Joint Committee Arbitration,* 47 Tul.L.   Rev. 325 (1973).

Paula Rosin, Asst. Public Defender, Appellate Div., Providence, R.I., with whom William F. Reilly, Public Defender, Providence, R.I., was on brief, for petitioner, appellant.

Anthony F. Del Bonis, Sp. Asst. Atty. Gen., Providence, R.I., with whom Dennis J. Roberts, Atty. Gen., Providence, R.I., was on brief, for respondent, appellee.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

In February 1978, Francis LaChappelle was tried and convicted in Rhode Island Superior Court of assault with attempt to rape. He appealed his conviction to the Supreme Court of Rhode Island, claiming that the trial judge's in camera questioning of his minor daughter, the complaining witness, violated his rights under the sixth and fourteenth amendments to the Constitution. After the Supreme Court of Rhode Island rejected these arguments, *State v. LaChappelle*, R.I., 424 A.2d 1039 (1981), LaChappelle petitioned the United States District Court for the District of Rhode Island for a writ of habeas corpus. The district court ruled that the in camera questioning violated LaChappelle's constitutional rights, but that the error was harmless beyond a reasonable doubt. LaChappelle appealed.

The facts are as follows. LaChappelle's sixteen-year-old daughter, Cynthia LaChappelle, was the complaining witness at LaChappelle's trial. The first witness called by the prosecution, she testified that her father attempted to rape her while they were alone in a parked automobile in June 1977. She testified that LaChappelle "reached an orgasm" during the attempted rape. In a signed statement she had given to the state police at an earlier date, she had stated that LaChappelle reached a "climax" during the alleged attack.

The defense attempted to undermine her credibility by eliciting and pointing out inconsistencies between her present and certain past testimony and statements. Towards the end of the lengthy cross-examination, defense counsel tried to demonstrate that neither her testimony nor her police statement consisted of her own words. Counsel asked her what the words "orgasm" and "climax" meant. She did not respond to the question. Counsel then withdrew the question and went on to other matters for some time. He later repeated the question, but again she did not respond. When the complainant did not answer the question for a third time, the judge ordered the jury out of the courtroom and reminded the witness of her obligation to answer the questions posed by defense counsel. The judge stated that he would have "no alternative" but to strike all of her testimony and dismiss the case if she continued to be unresponsive.

The judge then asked the complainant whether there was any particular reason for her not answering the question. When she did not answer, he asked, "Is it because of embarrassment?" She did not respond, but he told her that there was no reason to be embarrassed and allowed her some time alone to think over matters. Neither the prosecutor nor defense counsel were to speak to her during this period.

When the complainant returned to the courtroom, the judge repeated the warning that he would have to dismiss the case if she failed to answer the question. The witness then asked the judge if she could tell the prosecutor what her answer would be. The judge said, "You can tell the Court," and then asked her if she wished to confer with him alone. She replied yes. The judge then spoke to her in his chambers over the defense's objection. A court reporter was present during the in camera conference, and the transcript was later made available to the defendant.

The transcript shows that the following conversation took place in chambers:

THE COURT: [The complainant] again I have to ask you whether or not you will respond or answer the question that was offered by the attorney for Mr. LaChappelle. (pause) You have indicated you do not wish to answer; is that correct?

THE WITNESS: No, I will tell you.

THE COURT: If you would.

THE WITNESS: I meant—what I meant was that he, um,—

THE COURT: Go ahead. It's not going any further than the three of us.

THE WITNESS: What I meant was that he—(pause)

THE COURT: Go ahead.

THE WITNESS: He—(pause)

THE WITNESS: He—(pause)

THE COURT: Ejaculated?

THE WITNESS: I was thinking of come'd.

THE COURT: Okay. No problem. That is a very common word that all people use including adults. That is nothing. That is your only concern?

THE WITNESS: Please?

THE COURT: That is your only concern? That is the only reason why you were reluctant to answer the question?

THE WITNESS: Yes.

THE COURT: It's certainly a word that I am sure every member of the Jury, the attorneys and the Court have used, so there is nothing to be embarrassed about.

[The complainant] you leave the Court no alternative if you do not answer the question but to dismiss this case.

THE WITNESS: I just said it.

THE COURT: It has to be said in front of the Jury. I did not know what your real concern was. If it's simply because you might be embarrassed by using that word or terminology, that is certainly not sufficient reason.

They're all adults, and we only have another five minutes to go today. Once you testify, I will resume the hearing tomorrow. Then you will have sufficient opportunity to discuss your testimony, if necessary, with your attorney, Mr. Renaldo [the prosecutor]. But we have to have a response.

THE WITNESS: Can I just tell the Jury?

THE COURT: Tell the Jury what?

THE WITNESS: What I just told you.

THE COURT: Certainly.

THE WITNESS: Just the Jury?

THE COURT: All the attorneys and the defendant have to be present. That is the law. And if that is what happened, you certainly have the right to express that.

You see, this is a very difficult situation. I am sure it is very difficult for you, but you must recognize that if Mr. LaChappelle is found guilty, he could spend the rest of his life in jail and it all comes down to your testimony, and the Jury has the right to know everything about you—about your testimony—they have that right. If you were on trial for something, you have the right to have the Jury know everything about what happened. So I am sure if we go out there and you just make that response to the Jury, they will understand what you mean. They are all adults, as the Court, and you are a young adult now.

THE WITNESS: Is that the last question?

THE COURT: That should be the last question from the defendant, yes.

THE WITNESS: I don't know if I can.

THE COURT: Well, I certainly [cannot] force you to say it and I don't intend to, because the Court's responsibility is to both you and to the defendant to see that he gets a fair trial and we're looking for justice, and a lot depends upon your testimony. If you fail to testify—if you fail to give that answer or give an answer, then you leave the Court no alternative but to dismiss the case.

I am going to call the Jury up now, and it's 4:23 p.m. and we're supposed to be out of here at 4:30. The prosecutor will—or the defendant will ask the question one more time. If you care to answer, you just answer as you have answered me if that is the truth, and that's it.

THE WITNESS: Then I just go home, right?

THE COURT: You will have to come back tomorrow to be examined by Mr. Renaldo. By Mr. Renaldo.

THE WITNESS: Right.

THE COURT: If that is the truth and you wish to testify, then the Jury has the right to hear that. If you don't wish to testify, I will have to dismiss the case. Do you understand?

THE WITNESS: Yes.

THE COURT: Okay. I will have the Jury brought up.

You can step outside. —One second, I will have the sheriff accompany you—one second, if you will.

When the in camera conference was completed, the cross-examination of the complainant resumed. This time she answered the question with the words, "I meant he come'd." Defense counsel then went on to other matters in his questioning. The next day, just after two more prosecution witnesses had concluded their testimony and when the state was ready to rest, the judge read the transcript of the in camera discussion into the record, and also read into the record his reasons for the in camera interview as follows:

> [T]he Court took the unusual action of conversing with the witness because of her age, her apparent reluctance to testify, and her demeanor, itself, suggested to the Court that her testimony was critical. She was quite embarrassed, quite upset, and the Court took the unusual action of conversing with her out of the presence of the parties for the sole reason of determining whether or not she understood the consequences of not testifying and, frankly, to find out just what caused her reluctance to respond to the question.
>
> Because of the delicate situation of father and daughter, because of the delicate offense that has been alleged, because of the age, because of the demeanor of the witness the Court took that action . . . .

## I.

LaChappelle claims that the in camera conference with the complainant violated the confrontation clause of the sixth amendment because he was not permitted to be present. The district court agreed that LaChappelle had a constitutionally protected right to have been present, although it found it unnecessary to decide whether the right was founded upon the confrontation clause or only upon the more general due process clause. The court believed that either provision entitled him to be present.

We analyze the case differently. We do not believe that the in camera conference with the judge violated the confrontation clause of the sixth amendment. We think it a much closer question whether it violated the due process clause of the fourteenth amendment, but conclude, upon review of all the facts, that it did not. We turn first to the confrontation clause.

### A. *Confrontation Clause*

The confrontation clause states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Obligatory upon the states, it guarantees a criminal defendant the right to be present at every stage of his trial, *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), and to physically confront, and to cross-examine, the witnesses against him. *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

A central principle derived from the confrontation clause is the defendant's right to participate in his own defense. Thus the clause ensures that the defendant may, except when he is disruptive, 397 U.S. at 337, 90 S.Ct. at 1057, be present at all stages of his trial that "bear[ ], or may fairly be assumed to bear, a relation, reasonably substantial, to his opportunity to defend." *Snyder v. United States,* 291 U.S. 97, 106, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934). Accordingly, courts have held that the defendant may be present at suppression hearings, *e.g., United States v. Clark,* 475 F.2d 240 (2d Cir.1973); when a judge questions jurors as to their possible prejudice, *Blackwell v. Brewer,* 562 F.2d 596 (8th Cir.1977); and when instructions are read to the jury, *Bustamante v. Eyman,* 456 F.2d 269 (9th Cir. 1972). All such proceedings are stages of the adjudicative process, at which the fundamental importance of the defendant's presence is manifest. Matters may be asserted before a factfinder which the defendant alone knows how to answer or to correct. Tactical decisions vital to defendant may have to be made on the spot. And a defendant's presence may deter improper communications to those on whose shoulders rest the ultimate decision of his guilt or innocence.

Every aspect of a judicial proceeding, however, is not a stage of the trial at which

an accused must be present. Given the confrontation clause's central concern with enabling the defendant to assist with his own defense, a right of "presence [is not guaranteed where the defendant's] presence would be useless, or the benefit but a shadow." 291 U.S. at 106, 54 S.Ct. at 332, *see also United States v. Lyon,* 567 F.2d 777, 783 (8th Cir.1977) (in camera proceeding not improper where nothing occurred that could be used against defendant), *cert. denied,* 435 U.S. 918, 98 S.Ct. 1476, 55 L.Ed.2d 510 (1978). A threshold question in the present case is whether the closed conference between the judge and the minor complaining witness, whom the judge believed to be embarrassed, was a "stage of the trial" at which the accused had a right to be present, or whether it should be viewed as an ancillary proceeding to which the right to be present conferred by the confrontation clause did not attach. Even if the latter, what occurred had to comport with due process. But due process requirements are more flexible and capable of being tailored to the individual facts than is the confrontation clause whose mandate is close to being absolute, except where a defendant waives his own right to be present by misbehaving. A ruling that every in camera conference with a witness or juror is a "stage of the trial" for sixth amendment purposes would divest judges of any discretion whatever to conduct such private conferences. To be sure, in camera proceedings are seldom proper in a criminal trial. *See infra.* However, in the exercise of the court's residual power to ensure a just trial, and protect jurors and witnesses, a judge may in very rare circumstances feel it essential to confer with a juror or witness on the record but outside the presence of others, including the defendant. One example of such a conference might be where a juror or witness, having been threatened, wished to speak to the judge privately about the threat. For other possible examples, *see*

*United States v. Anderson,* 509 F.2d 724 (9th Cir.), *cert. denied,* 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975); *United States v. Ruiz-Estrella,* 481 F.2d 723 (2d Cir.1973). Should private conferences be injudiciously held, and result in unfairness, they would violate due process; but we think that review under the due process clause strikes a more precise balance between preservation of the trial judge's residual power to administer the trial and the defendant's rights, than does a ruling that all conferences— whatever the extent of the emergency—between a judge and a witness are subject to the confrontation clause. Here we hold the extraordinary in camera conference was not "a stage of the trial" at which the confrontation clause gave a right to be present.

The in camera conference took place outside the courtroom and wholly apart from any formal session of the court. It occurred while the jury was not present and the court was in recess. The judge was not performing in an adjudicatory role at the conference: he was not resolving any issue of fact or law in the state's criminal case against the defendant, nor was he instructing the jury concerning the case or its own role. As the transcript and the judge's later explanatory remarks show, the judge was merely attempting to find out the reason for the witness's refusal to answer, dispel her embarrassment, and remind her of the importance of responding to the question asked by defense counsel. The judge could alternatively have allowed the district attorney to undertake a similar role, in which event it would have been clear that the defendant had no right to be present.[1] Similarly, we do not see the in camera conference held here as "a stage of the trial" for purposes of sixth amendment analysis. Rather we view it as an event separate from the trial proper in which the judge sought to exercise his extraordinary powers to administer the trial in a just manner.

---

1. The judge, in fact, had forbidden the witness to confer with the prosecutor or defense counsel during an earlier recess afforded after she failed to answer. The judge's decision to interview the witness occurred just after she asked if she could consult with Mr. Renaldo, the prosecutor. The judge may have felt that an on-record conference with himself was a fairer, more neutral course.

Our conclusion in this respect is strengthened by our view that defendants' attendance at the conference was not needed in order to enable him to present a complete defense. *Cf. Jackson v. Beto,* 388 F.2d 409 (5th Cir.1968), *vacated on other grounds,* 408 U.S. 937, 92 S.Ct. 2866, 33 L.Ed.2d 757 (1972) (confrontation clause does not require defendant's presence at hearing to determine whether mentally retarded witness was competent to testify). LaChappelle argues that had he been physically present at the conference, the complainant might not have been so ready to tell the judge her answer to the question and then repeat it in open court. This may or may not be so, but that is hardly a confrontation clause issue. The confrontation clause guarantees a defendant the right of physical presence when a witness's response and demeanor are being tested before the trier of fact. But the right of the defendant to assist his own defense does not include the right to be present and influence the witness whenever the witness discusses or considers the case outside the courtroom. Just as the right to defend oneself does not include the right to be present when a witness discusses his testimony with the prosecutor or another lawyer, it does not apply here. The witness's response and demeanor were not being judged at the in camera conference, and when the witness resumed her testimony to the jury, the defendant was present.

As defendant's right to assist in his own defense was not implicated by his absence from the in camera proceeding, we hold that the confrontation clause was not violated.

### B. *Due Process*

Our holding as to the confrontation clause, however, does not end the inquiry. We must still consider what we find to be the more difficult issue, whether the trial court's actions, suspending cross-examination, warning the witness that the case would be dismissed if she did not answer the question and conferring with her alone but on the record, deprived the defendant of due process.

■ Courts, including this circuit, ordinarily regard in camera proceedings during criminal trials as improper. It has been said that "*in camera* proceedings during a criminal trial are manifestly conceptually incompatible with our system of criminal jurisprudence." *United States v. Arroyo-Angulo,* 580 F.2d 1137, 1141 (2d Cir.), *cert. denied,* 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978). *See also United States v. McNamara,* 422 F.2d 499 (1st Cir.), *cert. denied,* 397 U.S. 1056, 90 S.Ct. 1403, 25 L.Ed.2d 674 (1970); *Haller v. Robbins,* 409 F.2d 857 (1st Cir.1969). Ex parte communications between the judge and partisans "shadow the impartiality, or at least the appearance of impartiality, of any judicial proceeding." *Grieco v. Meachum,* 533 F.2d 713, 719 (1st Cir.), *cert. denied,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976). Here, the shadow of doubt cast by the judge's action was particularly disturbing because not only did the judge confer privately with the complaining witness, he suggested a possible answer to the pending question (ejaculation), and warned her repeatedly of the importance of her testimony. The result of all of these actions may suggest that the judge overstepped his neutral role and helped to rehabilitate the faltering testimony of the complainant. Adversarial conduct by the trial judge is to be frowned upon, most particularly in a criminal trial. *United States v. Gunter,* 631 F.2d 583 (8th Cir.1980).

■ But ex parte communications between a judge and a witness are not per se unconstitutional. *United States v. Arroyo-Angulo,* 580 F.2d at 1141; *Grieco v. Meachum,* 533 F.2d at 719. Limited exceptions have been recognized. *See supra.* And here, where the question is whether or not a state trial court's actions violated not a specific provision of the Bill of Rights but rather the due process clause itself, our review should be limited to whether or not the judge's actions were so egregious and fundamentally unfair as to deprive the defendant of his constitutional rights. *Donnelly v. DeChristoforo,* 416 U.S. 637, 94

S.Ct. 1868, 40 L.Ed.2d 431 (1974). In analyzing this question it is necessary to review both the state judge's reasons for conducting the in camera conference and the impact that the conference might have had on the defendant's ability to be tried on the basis of untainted evidence before an impartial trier of fact.

■ In the circumstances of this case, the integrity of the judge's reasons for holding the conference cannot be doubted. A trial judge has a duty to protect a witness from undue embarrassment. *United States v. Crosby,* 462 F.2d 1201 (D.C.Cir. 1972). Here, the complainant was a minor facing the painful task of testifying against her father who was charged with attempting to rape her. Counsel had asked her about the meaning of words that many people are embarrassed to discuss in public. While petitioner makes much of the contention that the judge could not be sure whether her failure to answer was due to embarrassment or lack of truthfulness, the court's assessment is reasonable on the record, and the court never relieved the witness of her duty to submit to cross-examination. Rather, after failing to elicit her response by using more customary methods, such as granting a recess, it decided that a private conference might enable it to ascertain what her difficulty in answering was so that the jury might have her full testimony. While there might have been other and better alternatives, the judge was faced with a troubling situation, and was attempting to handle it in a fair manner. Judges in our system are not mere bureaucrats. They have the ultimate responsibility to see that a trial is conducted fairly, and in difficult circumstances such as occurred here, they must do what they think right.

This is not to say, in hindsight, that the procedure followed was advisable. Still, we do not find that it eroded the defendant's ability to have a fair trial. The defendant was present and could defend himself whenever issues of law or fact were being tried. No factual or legal determinations were made on the basis of the in camera conference. The jury, the trier of fact in the case, was not aware that the conference occurred. *Cf. United States v. Gunter,* 631 F.2d 583 (8th Cir.1980) (trial court should not assume role of advocate before the eyes of jury). Furthermore, the defendant was given a complete transcript of the in camera conference, which would have enabled him to recall and examine the witness about it had he so desired, and to preserve any objections he had. *Cf. Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (defendant had right to cross-examine witness based upon sealed juvenile records).

■ Nor was the defendant's right to a fair trial jeopardized by the fact that the judge warned the witness that the case would be dismissed if she did not answer the defense counsel's question. The judge was under an obligation to remind the witness of her duty to answer the question. *State v. Robertson,* 102 R.I. 623, 232 A.2d 781 (1967), *cert. denied,* 390 U.S. 1036, 88 S.Ct. 1436, 20 L.Ed.2d 296 (1968). Because her testimony was extremely critical to the state's case and could have been stricken if she continued to refuse to answer the question, *see Gordon v. Indusco Management Corp.,* 164 Conn. 262, 320 A.2d 811 (1973); 98 C.J.S. § 374 (1957), the warning was a fair assessment of the actual consequences that might have followed had she continued to refuse to respond. Moreover, the defendant did not object to the judge's warning when it was made prior to the ex parte conference. We do not see how the warning could have had an undue influence on the complainant merely because it was later repeated in the defendant's absence.

The judge's suggestion of the word "ejaculation" is troubling. Clearly, a judge should not place important testimony into the mouths of witnesses. The complainant, however, rejected the judge's words and testified in her own words. Thus the actual testimony that was put before the jury was not tainted by the judge's suggestion. Therefore, while we do not condone the in camera proceeding, we do not think that it was so fundamentally unfair as to deprive the defendant of a fair trial.

*Affirmed.*