**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Johnathan Davis ADAMS, a/k/a Jonathan David Adams, and William Bryan Jennings, a/k/a Bill Jennings, Defendants-Appellants.**

**No. 84–3871.**

United States Court of Appeals,
Eleventh Circuit.

March 31, 1986.

Gwendolyn Spivey, Tallahassee, Fla., for Jennings.

Jeffrey Savlov, Tallahassee, Fla., for Adams.

Stephen P. Preisser, Asst. U.S. Atty., Pensacola, Fla., for plaintiff-appellee.

Appeal from the United States District Court for the Northern District of Florida.

Before FAY and KRAVITCH, Circuit Judges, and HENLEY *, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The issues in this appeal arise out of an *ex parte* conference of the district judge, the prosecutor, and a government witness. Such meetings are unusual and must be carefully conducted, especially in a criminal trial. In this case, however, an *ex parte* meeting was proper and appellants have shown no prejudice. Accordingly, we affirm.

BACKGROUND

The charges against appellants stemmed from their participation in an auto theft ring. The jury convicted appellant Jennings of one count of mail fraud, 18 U.S.C. § 1341, one count of interstate transportation of a stolen motor vehicle, 18 U.S.C. § 2312, twenty-two counts of interstate sale of a stolen motor vehicle, 18 U.S.C. § 2313, thirteen counts of interstate transportation of stolen property, 18 U.S.C. § 2314, and one count of conspiracy to transport stolen vehicles in interstate commerce, 18 U.S.C. § 371. The jury convicted appellant Adams of three counts of interstate transportation of a stolen motor vehicle, and one count of conspiracy to transport stolen motor vehicles. The testimony at trial indicated that the ring worked on a

---

* Honorable J. Smith Henley, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

simple scheme: Jennings would purchase a junked vehicle, arrange for the theft of a vehicle of the same make and model, transfer the vehicle identification number plates from the junked vehicle to the stolen vehicle, and then market the stolen car through a used car dealer. Appellants do not question sufficiency of the evidence to support the convictions.

The issues on appeal all concern the testimony of Loy Pooley. Pooley simply testified that he and Adams stole three vehicles, and that Adams paid him $100 on each occasion; he provided no further details of the ring. Pooley initially refused to testify, invoking his fifth amendment privilege. The court then granted the government's motion to compel the testimony pursuant to 18 U.S.C. §§ 6002–03; under such a motion, the witness is granted use immunity. Pooley, however, still refused to testify. The court found him in contempt, and jailed him.

Four days later the district court conferred in chambers with Pooley, the prosecutor, and counsel for appellant Jennings. The conference was transcribed by the court reporter. The court explained to Pooley that he was being held on civil contempt, but that if he continued to refuse to testify he could be charged with criminal contempt. Pooley responded that the basis of his refusal was not fear of self-incrimination, but fear for his life should he testify; Pooley stated that he would rather stay in jail than testify and be killed. The court then requested counsel for Jennings to leave, and counsel complied without objection. The court inquired whether the witness had been offered protection by the prosecutor. The prosecutor suggested that he believed Pooley's fears to be well founded and that he would endeavor to enroll Pooley in the witness protection program. Pooley, however, indicated that he felt the need for immediate protection, and the prosecutor stated that he could "probably, through the F.B.I., get some funds for immediate relocation." The prosecutor agreed to immediately look into the availability of funds, and Pooley agreed to testify the next day. The court indicated that

the testimony would purge Pooley of contempt.

After Pooley agreed to testify, the prosecutor attempted to impress an important "distinction" upon the witness:

PROSECUTOR: I want something understood, judge. I'm not willing to pay him for his testimony. There is a distinction between the two. I'm willing to help you any way I can with your safety, but I'm not willing to pay you for your testimony. I don't want that in any way construed as he's being paid in return for his testimony. As long as he testifies truthfully under oath, I don't care what he says.

THE COURT: Well, that's right, and I don't either. That's exactly right, as long as it's the truth.

.      .      .      .      . .

PROSECUTOR: You understand, now, if they ask you have you been paid anything by the Government, I haven't paid you; I'm not paying you to testify. I'm helping you out, because you think you're in fear of your life. If they ask that question, then that's another issue, but I don't want it perceived that I'm paying you.

THE COURT: If they ask you anything, have you received anything, that could be what he'd want to tell them.

PROSECUTOR: I think what he should say is no, he hasn't, although he's made application for the witness security program, if that's an appropriate answer at the time.

THE COURT: It depends on what's appropriate at the time he testifies, whatever you tell them.

The next day, Pooley took the stand. Out of the presence of the jury, the prosecutor requested, and the judge so instructed, that the witness not refer to any threats or fears during his testimony. Counsel for appellants then requested that the government reveal any inducements that had been made to the witness. The prosecutor stated that the only promise was to seek enrollment in the witness pro-

tection program. Pooley confirmed this. The prosecutor's promise to seek funds for immediate relocation of Pooley was not mentioned. The jury was then recalled, and Pooley testified. On cross-examination, counsel for appellant Adams cross-examined Pooley, but did not inquire about the prosecutor's promise to enroll Pooley in the witness protection program. Counsel for appellant Jennings did not cross-examine Pooley.

ANALYSIS

The appellants contend that the *ex parte* conference was improper and that it violated their due process right to a fundamentally fair trial. We agree with appellants that *ex parte* conferences should occur but rarely, especially in criminal cases. This does not mean, however, that such conferences are unconstitutional[1]; indeed, in some situations the trial judge may find an *ex parte* conference necessary. In *La-Chappelle v. Moran*, 699 F.2d 560 (1st Cir.1983), the court stated that:

> [I]n the exercise of the court's residual power to ensure a just trial, and protect jurors and witnesses, a judge may in very rare circumstances feel it essential to confer with a juror or witness on the record but outside the presence of others, including the defendant. One example of such a conference might be where a juror or witness, having been threatened, wished to speak with the judge privately about the threat.

*Id.* at 565. A witness may not feel free to discuss any threats in the presence of the defendant or even counsel for defendant, and we agree with the First Circuit that an *ex parte* conference is appropriate in this situation. *See also United States v. Arroyo-Angulo*, 580 F.2d 1137, 1141–42 (2d Cir.) (exclusion of certain defendants and

counsel from *in camera* proceedings permissible in multiple defendant trial, where certain defendants had cooperated with government and had received death threats), *cert. denied*, 439 U.S. 913, 99 S.Ct. 285, 58 L.Ed.2d 260 (1978).

▮▮▮ Although an *ex parte* conference to discuss threats against a witness is proper, the district court must insure that the conference is carefully conducted so that no rights of the defendant are threatened. In this case, the court followed procedures to insure that the conference was fair: first, at no time was the substance of Pooley's inculpatory testimony discussed; second, the entire conference was transcribed.[2] *Cf. United States v. Watchmaker*, 761 F.2d 1459, 1466 (11th Cir.1985) (*ex parte* conference with frightened juror proper where transcribed and judge's comments carefully framed).

Two aspects of this conference, however, are disturbing. First, when the prosecutor began to impress upon the witness the distinction between being paid for testimony and being afforded protection, the trial court should have called the conference to a close. The portion of the record quoted above indicates an attempt by the prosecutor to coach the witness on how to answer questions about inducements for his testimony. The court already had learned all it needed to concerning the witness's fears and the prosecutor's plans for protection; there was no reason to participate in such coaching.

The second problem occurred when Pooley took the stand. When defense counsel inquired about what inducements had been given for Pooley's testimony, the prosecutor and Pooley both indicated that the only promise was that the prosecutor would seek to enroll Pooley in the witness protec-

---

1. Other circuits have held that *ex parte* conferences between a trial judge and a witness do not violate a defendant's rights under the confrontation clause of the sixth amendment, *LaChappelle v. Moran*, 699 F.2d 560, 566 (1st Cir.1983), or the defendant's right to counsel, *United States v. Arroyo-Angulo*, 580 F.2d 1137, 1143–44 (2d Cir.1978).

2. Appellants contend that the district court should have made the record of the conference available during trial. However, obviously counsel were aware that the reporter was present and there is no indication that counsel ever requested a transcript. We need not consider, therefore, whether the appellants were entitled to a transcript of the conference (or a portion of the transcript) during trial.

tion program if he were in fear for his life. Neither related the prosecutor's pledge to seek immediate protection for Pooley should it be necessary. This exchange occurred before the court, and the court should have made sure that the inducements made in the *ex parte* conference were completely and precisely disclosed.[3]

▆ Although these two portions of the conference raise an appearance of impropriety, appellants were not prejudiced and accordingly no reversible error occurred. With respect to the coaching, the record of the conference shows that the court simply told the witness that he should answer questions truthfully, and the witness did answer all questions truthfully.[1] Moreover, the coaching related solely to the offers of protection, and appellants decided not to pursue this matter before the jury. Accordingly, although the court should not have allowed the prosecutor to coach Pooley in an *ex parte* conference, the appellants were in no way prejudiced and their trial was not unfair. *See United States v. Walsh,* 700 F.2d 846, 858 (2d Cir.) (*ex parte* contacts do not require reversal if they do not affect fairness of trial), *cert. denied,* 464 U.S. 825, 104 S.Ct. 96, 78 L.Ed.2d 102 (1983); *Greico v. Meachum,* 533 F.2d 713, 719 (1st Cir.) (same), *cert. denied,* 429 U.S. 858, 97 S.Ct. 158, 50 L.Ed.2d 135 (1976); *LaChappelle v. Moran,* 699 F.2d 560, 567 (1st Cir.1983) (judge's *ex parte* suggestion of certain word to witness not prejudicial where witness chose own words in testimony).

▆ Appellants also have failed to show that they were prejudiced by the court's failure to reveal the promise of immediate protection. We must consider this nondisclosure in light of the fact that counsel for appellants knew of the promise to seek enrollment in the witness protection program, and chose not to bring it out before the jury. The reason that counsel did so is obvious: the offer of protection was made because of the witness's fear of reprisal, and the existence of this fear would not have cast a favorable light on the defendants in the eyes of the jury. The undisclosed offer of assistance with immediate relocation also was solely due to the fear of reprisal. It is therefore clear that had counsel learned of the promise, they hardly would have elected to reveal the promise in front of the jury, because such revelation would have disclosed the threats made against Pooley.[5] Accordingly, the *ex parte* conference did not result in any unfairness to appellants.

The judgment of the district court is AFFIRMED.

---

**3.** The record indicates that the prosecutor and the district court simply failed to see a significant distinction between an offer of long-term protection in the witness protection program and immediate protection. However, the two possibilities were discussed separately in chambers. Accordingly, when the defense in open court requested all inducements for Pooley's testimony the court should have ensured that the inducements made in *ex parte* proceedings were precisely revealed to the defense.

**4.** Appellants contend that two responses by Pooley during questioning outside the presence of the jury were "less than candid." Pooley was asked "Have you been promised an offer of a job or move from the area?" and he answered "no." This answer is completely truthful; no promise of such assistance had been made; the

prosecutor had only promised to seek such assistance, and Pooley acknowledged this promise in his testimony.

**5.** Appellants also claim that the prosecutor's failure to reveal his promise to seek immediate relocation funds upon their request for all inducements denied them of their right to due process under *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963) and *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). However, a *Brady* violation occurs only when the prosecutor fails to disclose material evidence. *United States v. Bagley,* —— U.S. ——, 105 S.Ct. 3375, 3381, 87 L.Ed.2d 481 (1985). We have already determined that this evidence was of no use to the appellants; accordingly it could not have been material.