**Billy LESTER, Appellant,**

v.

**COMMONWEALTH OF KENTUCKY,**
**Appellee.**

**No. 2003–SC–0051–MR.**

Supreme Court of Kentucky.

April 22, 2004.

---

Euva D. May, Assistant Public Advocate, Appellate Division, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Todd D. Ferguson, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

Appellant, Billy Lester, was convicted of three counts of first-degree sodomy, one count of first-degree sexual abuse, and one count of second-degree sexual abuse. He was sentenced to a total of twenty years' imprisonment and appeals to this Court as a matter of right. For the reasons set forth below, we affirm the judgment of the Pike Circuit Court.

### I. Facts

When the charged offenses occurred, Lester was married to and living with Carol Sue Lester. Also living with the Lesters were Carol's three children, which included her daughter, ABC. ABC was one of the victims in this case. The other victim was ANC, who was Carol's niece.

The offenses came to light when Carol questioned ABC about an ambiguous statement ABC made one night after Lester struck ABC for failing to do an as-signed chore. ABC told Lester not to mess with her or she would tell her mom what she knew about Lester. Carol assumed that Lester was cheating on her with another woman. Instead, ABC told Carol that Lester had been sexually molesting her. Carol threw Lester out of the house and reported him to the police.

Once ABC's allegations came to light, ANC made similar allegations against Lester. An investigation ensued, an indictment was returned, and Lester went to trial on the charges against him.

As part of preparing its case, the Commonwealth served a subpoena upon Carol to produce ABC to testify at Lester's trial. While Carol appeared, she failed to bring ABC with her. During a recess after voir dire, the trial court held an ex parte hearing in chambers with Carol and the Commonwealth's Attorney. The hearing was held on the record.

The purpose of the hearing was to determine why Carol had not honored the subpoena and to ascertain ABC's current whereabouts. Carol was very defensive during the hearing. She testified that ABC had been adopted by her maternal grandparents and was staying with them. At first, she was deliberately vague as to where her parents lived and professed to not know her parents' phone number. The Commonwealth's Attorney persisted in asking questions concerning the address of Carol's parents. At one point, Carol invoked her Fifth Amendment rights and at another point she stated that she would rather go to jail than reveal the information requested.

Clearly upset, Carol turned to the judge and asked to speak with him alone. The trial judge informed her that whatever she had to say, she could say in front of the Commonwealth's Attorney. Further, the judge advised her that her testimony was

being recorded. Carol then stated that ABC did not want to testify and asked why the court was forcing her to attend the trial and testify against Lester. The judge explained that the Commonwealth decided who to put on the stand when it prosecuted a case. Carol then relented and revealed her parents' phone number and a better description of their address. The hearing then came to an end.

After the recess, the trial court informed defense counsel of the hearing and made the videotape of it available for review. After reviewing the tape, defense counsel moved for a mistrial on grounds that the hearing was a critical stage of the proceedings at which Lester had a right to be present. The trial court denied the motion.

## II. Issues

### A. Ex Parte Hearing

▮▮▮ Lester first argues that the ex parte hearing concerning ABC's absence from the courtroom denied him his constitutional rights of representation and confrontation. The Commonwealth concedes error, but argues that the error was harmless. Upon further research into the issue, we determine that the trial court did not err in holding the ex parte hearing in this case.

Under RCr 8.28, a defendant has the right to be present "at every critical stage of the trial."

This right is protected not only by RCr 8.28, but also by the Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Section 11 of the Constitution of Kentucky. *Illinois v. Allen*, 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970) ("[o]ne of the most basic rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial").

*Price v. Commonwealth*, Ky., 31 S.W.3d 885, 892 (2000). Thus, if Lester is correct and the hearing was a critical stage, the trial court had no authority to hold the hearing and reversal likely would be required. *See United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657, 668 (1984). ("[A] trial is unfair if the accused is denied counsel at a critical stage of his trial.") But a number of courts have held that hearings similar to the one held in the case at bar are not critical stages subject to Sixth Amendment restrictions on the trial court's inherent authority.

In *LaChappelle v. Moran*, 699 F.2d 560, 562 (1st Cir.1983), the trial judge met in chambers with a witness to discuss why she refused to answer a particular question. The witness revealed that she was embarrassed to use a certain word and was unsure whether she could say the word in open court. *Id.* Neither the prosecutor nor the defense counsel was present during this conference. *Id.* The conference, however, was recorded. *Id.* At the conclusion of the conference, the witness returned to the stand and used the objectionable word. *Id.* at 564. On appeal, the appellant argued that the in camera hearing violated the confrontation clause of the Sixth Amendment because he was not present. *Id.*

The *LaChappelle* Court rejected the appellant's argument "that every in camera conference with a witness or juror is a 'stage of the trial' for sixth amendment purposes," because this holding "would divest judges of any discretion whatever to conduct such private conferences." *Id.* at 565. The Court noted that, while seldom proper in criminal trials, in "very rare circumstances" a trial court might determine that it is essential to confer with a juror or witness in private and on the record, even at the expense of excluding

the defendant and defense counsel from the hearing. *Id.* It gave as an example of this, the situation "where a juror or witness, having been threatened, wished to speak to the judge privately about the threat." *Id.* Thus, *LaChappelle* held that the Sixth Amendment was not implicated by the in camera hearing. Rather, it determined that the hearing was "an event separate from the trial proper in which the judge sought to exercise his extraordinary powers to administer the trial in a just manner." *Id.* The Court then determined that the claim of error should be reviewed under a due process analysis rather than the Sixth Amendment analysis urged by the appellant. *Id.*

In *United States v. Adams,* 785 F.2d 917, 920 (11th Cir.1986), the appellants claimed that an ex parte hearing violated their "due process right to a fundamentally fair trial." In *Adams,* a prosecuting witness invoked his Fifth Amendment privilege and refused to testify. *Id.* at 919. The government then moved the trial court to compel the witness's testimony by granting him use immunity. *Id.* The trial court granted the motion, but the witness refused to testify and the witness was held in contempt of court. *Id.* Subsequently, the trial court met in chambers with the witness, the prosecutor, and the defense attorney for one of the defendants. *Id.*

During the in-chambers meeting, the witness revealed that he was afraid to testify because he believed he would be killed by the defendant if he testified. *Id.* The prosecutor stated that the witness's fears were well founded and promised to enroll the witness in the witness protection program. *Id.* The witness agreed to testify, and the trial court purged the contempt charge when the witness took the stand. *Id.*

The *Adams* Court held in no uncertain terms that "an ex parte conference to discuss threats against a witness is proper." *Id.* at 920. The Court cautioned, however, that the trial court must carefully administer such a conference to make certain that "no rights of the defendant are threatened." *Id.* The *Adams* Court then identified two elements of the procedure used by the trial court which helped to ensure that the hearing was fair: (1) at no time was the substance of the witness's inculpatory testimony discussed, and (2) the hearing was transcribed. *Id.* It then weighed these safeguards against elements of the proceeding that it determined troubling in order to evaluate the appellant's due process claim. *Id.* at 920–21.

Based on the above analysis, we hold that the ex parte hearing at issue in the case at bar was not a critical stage of the defendant's trial within the meaning of the Sixth Amendment to the U.S. Constitution or Section 11 of the Kentucky Constitution. Therefore, we examine Lester's claim of error under a due process analysis. *See LaChappelle,* 699 F.2d at 565.

During the in-chambers hearing in question, no aspect of Carol's testimony was discussed, much less the testimony of ABC. Further, the hearing was on the record. Finally, defense counsel was allowed to review the tape of the hearing before the jury was sworn and make any objections on the record. Thus, the trial court used a procedure that safeguarded Lester's rights. On appeal, Lester argues that, had he been present, he would have asserted his marital privilege under KRE 504 to prevent Carol from testifying. Additionally, he argues that his absence prevented him from developing impeachment testimony. The arguments are not well taken.

While we doubt that Carol's testimony at the hearing was "against" Lester within the meaning of KRE 504, the privilege was

not available to Lester under the exception of KRE 504(c)(2)(B) which provides:

There is no privilege under this rule ... [i]n any proceeding in which one (1) spouse is charged with wrongful conduct against the person or property or ... [a] minor child of either.

Next, we fail to see how Lester's presence at the hearing would have allowed him to develop impeachment testimony. As noted, her testimony at the hearing did not touch on the subject matter of her testimony at trial. Lester makes no argument on appeal that Carol's reluctance to honor the subpoena to produce her daughter is in any way relevant to the Commonwealth's case in chief, or to his defense.

Therefore, upon review of the record of the ex parte hearing and Lester's arguments, we hold that the hearing did not violate Lester's due process rights.

■ In conclusion, we caution that ex parte hearings such as the one held here should only occur in the rarest of circumstances and only when the trial court feels that such a hearing is necessary to ensure a just trial. When such a hearing is held, the trial court must strive to ensure that the defendant's rights are not endangered by the hearing. And, at a minimum, the hearing must be on the record, any questioning should not address the substance of a witness's trial testimony, and absent any extenuating circumstances, defense counsel should be allowed to review the record of the hearing at the earliest opportunity.

## B. Sleeping Juror

■ On the first day of trial and following ANC's testimony, both the Commonwealth and defense counsel approached the bench. At the bench conference, the Commonwealth's Attorney alerted the trial court to the fact that a juror, Juror R, had been sleeping during the testimony. Defense counsel stated that he'd heard snoring, but did not know which juror it was. On the second day of trial, both counsel again approached the bench. This time, defense counsel stated that he thought Juror R had been sleeping during the trial. The Commonwealth's Attorney responded by saying that she had noticed Juror R sleeping. The trial judge stated that Juror R appeared to be all right.

At the conclusion of the evidence, the trial court dismissed Juror R as the alternate juror. In doing so, the trial judge specifically noted his strong concern for keeping a juror on the panel that may have slept through part of the trial. Further, he noted his understanding that both counsel wanted Juror R to remain on the panel. Finally, the trial judge stated that while he had not observed the juror sleeping, he had heard a noise that could have been snoring. Defense counsel objected to striking Juror R as the alternate juror. On appeal, Lester argues that the trial court erred in dismissing Juror R without conducting a hearing as to whether he was actually sleeping during trial. We disagree.

■ There is little case law in the Commonwealth concerning sleeping jurors, and most of the cases that do exist concern the question of leaving a sleeping juror on the panel, rather than erroneously removing a juror who was not actually asleep. *See, e.g., Young v. Commonwealth*, Ky., 50 S.W.3d 148, 164 (2001); *Shrout v. Commonwealth*, 226 Ky. 660, 11 S.W.2d 726 (1928). In such a case, a juror's inattentiveness is a form of juror misconduct, which may prejudice the defendant and require the granting of a new trial. 58 Am.Jur.2d *New Trial* § 229 (online version updated May, 2003). The question of prejudice is not nearly as clear where the trial

court erroneously removes a juror from the panel as an alternate.

The only obvious harm to either party in such a situation is that erroneously removing a particular juror as an alternate would interfere with the randomness of the jury selection process contemplated by CR 47.02, which provides for designating alternate jurors from the panel by lot. But we are not faced with a violation of CR 47.02, because the law is clear that a trial court may remove a juror for cause at the conclusion of the evidence as an alternate juror without violating the rule. *Hubbard v. Commonwealth*, Ky.App., 932 S.W.2d 381, 382 (1996). Rather, the question is whether the trial court erred in removing Juror R for cause.

■ A trial court's decision whether to remove a juror from a panel that has already been seated is reviewed for abuse of discretion. *Id.; cf. Peters v. Commonwealth*, Ky., 505 S.W.2d 764, 765 (1974) (prospective jurors). Thus, the issue is simply whether the trial judge abused his discretion in dismissing Juror R for cause. We hold that there was no abuse of discretion.

■ The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Goodyear Tire and Rubber Co. v. Thompson*, Ky., 11 S.W.3d 575, 581 (2000). Applying this test, we find no abuse of discretion.

While the trial judge did not make any inquiries into the question of whether Juror R had been sleeping during trial, the court did have the claims of both counsel that the juror had been asleep. Further, the trial judge had heard snoring coming from the jury box. Additionally, the trial judge noted that both counsel wanted to keep Juror R on the panel. Finally, the trial judge removed Juror R out of an abundance of caution in order to protect Lester's right to a fair trial. Therefore, we conclude that the trial court's decision was fair and reasonable under the circumstances. There was no error.

## C. Admonition

■ Next, Lester argues that the trial court erred in failing to admonish the jury to disregard a social worker's testimony that indicated her belief that ABC's and ANC's claims against Lester were true. Upon objection, the trial court ruled that the evidence was not admissible. At the bench conference on the motion, the Commonwealth's Attorney suggested that the trial court admonish the jury. The trial court indicated that it would admonish the jury if that was what defense counsel wanted. But defense counsel never asked for the admonition. The argument on appeal is without merit.

## D. Prosecutorial Misconduct

Finally, Lester argues that the Commonwealth's Attorney crossed the line of acceptable argument in her closing arguments and that the case must be reversed for this misconduct. The error is not preserved.

We have reviewed each claim individually and cumulatively. We conclude that the Commonwealth's Attorney did not exceed the reasonable latitude allowed both parties during closing argument. *Lynem v. Commonwealth*, Ky., 565 S.W.2d 141 (1978). There was no error.

## III. Conclusion

For the reasons set forth above, we affirm the judgment of the Pike Circuit Court.

All concur.