# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 18, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

## 2014-SC-000746-MR

DATE 3-10-16 _____

JAMES FRANKLIN WOODS　　　　　　　　　　　　　　APPELLANT


V.　　　　　　ON APPEAL FROM JEFFERSON CIRCUIT COURT
　　　　　　　　HONORABLE MITCH PERRY, JUDGE
　　　　　　　　　　　NO. 11-CR-002882


COMMONWEALTH OF KENTUCKY　　　　　　　　　　APPELLEE


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

On the morning of January 4, 1993, Appellant, James Franklin Woods, unlawfully entered the apartment of Patricia and raped her.[1] He did so by entering through the back door of the apartment, which Patricia had left unlocked because she was expecting her daughter to arrive soon. Patricia observed that Appellant was wearing a mask and gloves, and that he said he had a knife. Appellant held Patricia down and removed her clothes. He told her to turn over. He then initiated anal sex and achieved slight penetration before Patricia stated that she had diarrhea. Appellant stopped and then commenced vaginal intercourse. He also requested oral sex but Patricia refused. When he was finished, Appellant covered Patricia's head with pillows

---

[1] Pseudonyms are being used to protect the anonymity of the victim.

and told her not to move. After waiting several minutes, Patricia got up and called her husband who then called the police.

Officers questioned Patricia at the crime scene. She stated that she had not seen the man's face, but gave a general description of his height and build. She also stated that she believed the man was African American. She based this on his voice and the fact that she saw his penis. After speaking with officers, Patricia was taken to the hospital where a sexual assault exam was administered. Several items were retrieved from the scene including numerous articles of Patricia's bedding, her underwear, and a wash cloth. These items were subsequently subjected to forensic testing.

This case was investigated for a year but ultimately went cold. It remained so until August of 2011, when the Louisville Metro Police Department ("LMPD") received notice of a DNA match from the Kentucky State Police ("KSP"). Based on this information, Appellant, was indicted by the Jefferson County Grand Jury on the following charges: 1) first-degree rape; 2) first-degree sodomy; 3) first-degree burglary; and 4) being a first-degree persistent felony offender ("PFO"). The PFO charge was later dismissed.

After his arrest, Appellant, who is African American, informed detectives that he had been living at the same apartment complex as Patricia around the time of the incident. As the case progressed, a current DNA sample was obtained from Appellant and compared with the other evidence retrieved from the crime scene and from the sexual assault kit. A forensic analyst testified at trial that Appellant's DNA profile matched the DNA profile on Patricia's

2

underwear at 14 of 15 different testing locations and was inconclusive at the remaining location, and that the estimated frequency of such a match was one in four quintillion people. The analyst also testified that the test results matched Appellant's DNA with the DNA retrieved from the vaginal swabs, and a hair that was discovered in Patricia's bedding. The estimated frequency of these matches was one in 190 million and one in 620 billion people respectively.

The jury convicted Appellant of first-degree rape, first-degree sodomy, and first-degree burglary. The jury recommended a sentence of 20 years' imprisonment for each, to be served consecutively for a total sentence of 60 years. The trial court sentenced Appellant in accordance with the jury's recommendation. Appellant now appeals his conviction and sentence as a matter of right pursuant to § 110(2)(b) of the Kentucky Constitution. Four issues are raised and addressed as follows.

## Juror Disqualification

Appellant first argues that the trial court erred by allowing Juror 1184360 to remain as an alternate through the end of trial. Appellant did not raise this objection at trial. Therefore, we will review for palpable error. RCr 10.26; *McCleery v. Commonwealth*, 410 S.W.3d 597, 606 (Ky. 2013) (we will not reverse unless "it can be determined that manifest injustice, i.e., a repugnant and intolerable outcome, resulted from that error.").

On the morning of the third day of trial, the court questioned the jurors whether they read a newspaper article about the pending case, which had been

3

published that same morning. Juror 1184360 indicated that he had read the article but that it did not impact his determination concerning Appellant's guilt. After discussing the issue with counsel, the judge stated that it was "highly likely" that he would designate Juror 1184360 as an alternate juror.

Later that day, the judge reviewed the article and again stated that it was "highly likely" that he would designate Juror 1184360 as an alternate juror. Defense counsel was also given the opportunity to review the article and declined to move for a mistrial or request any additional relief. Juror 1184360 remained on the jury until after closing arguments. At that time, he was selected as the alternate and was removed from the rest of the jury prior to deliberations.

"[T]he law is clear that a trial court may remove a juror for cause at the conclusion of the evidence as an alternate juror without violating the rule [of randomness]." *Lester v. Commonwealth*, 132 S.W.3d 857, 863 (Ky. 2004) (citing *Hubbard v. Commonwealth*, 932 S.W.2d 381, 382 (Ky. App. 1996)); *see also* CR 47.02. Appellant has provided no evidence that Juror 1184360 discussed the article or its contents with the other jurors at any time prior to his removal. The trial court also repeatedly admonished the jury not to discuss the case. Appellant has failed to demonstrate that the Juror ignored that admonishment. There was no palpable error here.

### Motion for a New Trial

Appellant argues that the court erred in denying his pro se motion for a new trial. He raises two issues from that motion on appeal. He claims a

4

violation of *Brady v. Maryland*, 373 U.S. 83 (1963), and KRE 404(b). Neither of these issues was raised during trial. We review a trial court's denial of a motion for a new trial for an abuse of discretion. *Brown v. Commonwealth*, 174 S.W.3d 421, 428 (Ky. 2005).

The alleged *Brady* violation arises from evidence discovered by Dawn Katz, a former KSP forensic biologist. Ms. Katz testified at trial that she examined one "Negroid hair" that was discovered in Patricia's bedding. Ms. Katz had noted the hair in her report. Ms. Katz also testified that Caucasian hairs were discovered in the bedding. These Caucasian hairs were not subjected to DNA analysis and were not mentioned in Ms. Katz's report, although she did document the Caucasian hairs in her notes. Ms. Katz testified that she did not test these hairs because Patricia was "allegedly attacked by an unknown black male," which was consistent with the description provided to Ms. Katz by the police.

Appellant argues that Ms. Katz's decision not to disclose evidence was improper. Appellant also cites a federal civil case where Ms. Katz was sued for allegedly violating a criminal defendant's constitutional rights by withholding evidence. *Gregory v. City of Louisville*, 444 F.3d 725, 732 (6th Cir. 2006). Appellant's argument here fails for several reasons.

First, *Brady* "only applies to 'the discovery, *after trial*, of information which had been known to the prosecution but *unknown to the defense.*'" *Bowling v. Commonwealth*, 80 S.W.3d 405, 410 (Ky. 2002) (citation omitted). The Caucasian hairs at issue here were clearly discovered prior to trial and

were documented in Katz's notes. Therefore, this is not a *Brady* issue.

Second, Appellant does not claim that the Commonwealth failed to provide Ms. Katz's report during discovery, or the notes that were attached to the report. Thus, there is no indication that Appellant's counsel was unaware of the existence of the Caucasian hairs prior to trial. Lastly, *Gregory* is irrelevant here. Therefore, we cannot determine that the trial court abused its discretion in denying Appellant's pro se motion for a new trial on this issue.

The alleged KRE 404(b) violation also arose from Ms. Katz's testimony wherein she discussed the Combined DNA Index System ("CODIS") database from which Appellant's DNA was discovered. That database is comprised of DNA of individuals who are convicted felons. Appellant argues that Ms. Katz's testimony concerning the CODIS database and its function constitutes an impermissible reference to Appellant's previous criminal history. Here is the portion of Ms. Katz's testimony with which Appellant takes issue:

> So, we do have a database that has suspects in it that have been convicted of other crimes. And, then you can also just take that profile and compare it to other cases if you don't have a suspect as well. So, you don't have to have a suspect to compare the profile that we get from an item. But, if you want to identify whose DNA is coming from the item then you do have to have a suspect and they either have to have a standard from someone who they think is involved or they would be in the CODIS database as a convicted felon.

As previously discussed, Appellant's counsel did not object to this testimony. Having reviewed the relevant portion of Ms. Katz's testimony, we determine that any error here was not palpable. Even if the jury inferred from this testimony that Appellant was a convicted felon, the forensic evidence in this case

6

unequivocally indicates Appellant's guilt. It is inconceivable that the jury would have reached a different result absent this contested testimony. Thus, the trial court did not abuse its discretion in denying Appellant's pro se motion for a new trial on this issue.

### Directed Verdict

Appellant contends that the trial court erred in denying his two motions for a directed verdict arguing that the Commonwealth failed to establish a proper chain of custody of the evidence. The evidence at issue is: 1) Commonwealth's Exhibit 58—Patricia's washcloth and underwear; 2) Commonwealth's Exhibit 59— Patricia's clothing; and 3) the Commonwealth's Exhibit 60— Patricia's bedding.

We will reverse the trial court's denial of a motion for directed verdict "if under the evidence as a whole, it would be *clearly unreasonable* for a jury to find guilt[.]" *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983) (emphasis added)). When ruling on a directed verdict motion, the trial court must assume that the Commonwealth's evidence is true. *Benham*, 816 S.W.2d at 187.

Appellant presents several instances concerning the alleged failure to establish a proper chain of custody of the evidence. In *Hunt v. Commonwealth*, we stated:

> it is unnecessary to establish a perfect chain of custody or eliminate all possibility of tampering or misidentification, so long as there is persuasive evidence that the reasonable probability is that the evidence has not been altered in any material respect . . . . 304 S.W.3d 15, 29 (Ky. 2009) (citation omitted).

7

Having considered Appellant's argument and the evidence cited in support thereof, there is no reasonable probability that the evidence was altered. However, it is unnecessary to discuss each alleged inference of tampering or misidentification because, "the issue is not whether the Appellant would have been entitled to a directed verdict of acquittal absent the improperly admitted evidence, but whether the evidence that was, in fact, admitted was sufficient to take the case to the jury." *Osborne v. Commonwealth*, 43 S.W.3d 234, 245 (Ky. 2001) (citation omitted). The evidence that was admitted was more than sufficient to take the case to the jury. Therefore, the trial court did not err in denying Appellant's motions for a directed verdict.

## Impermissible Testimony

For his final argument, Appellant contends that the testimony of Patricia's daughter, Sara Gant, constituted impermissible "bolstering" and the "piling on" of testimony. Ms. Gant testified as a witness for the Commonwealth during the guilt stage of trial concerning her mother's general demeanor after she was raped. This issue is unpreserved. Therefore, we will review for palpable error. RCr 10.26.

Ms. Gant specifically testified that, after the rape, her mother was "afraid to leave the apartment, return to work, or resume life," and that she was "absolutely different." Her testimony was brief and echoed Patricia's testimony. These were visual observations of the victim's behavior which are consistent with someone who has experienced the emotional devastation of rape. This

8

corroborating evidence was both probative and admissible. There was no error here.

## **Conclusion**

For the foregoing reasons, we hereby affirm the judgment of the Jefferson Circuit Court.

All sitting. Minton, C.J.; Cunningham, Hughes, Venters, and Wright, JJ., concur. Keller and Noble, JJ., concur in result only.

COUNSEL FOR APPELLANT:

Julia Karol Pearson
Assistant Public Advocate

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

John Paul Varo
Assistant Attorney General